2011 Ark. App. 737

Hazel **SUTTON**, as Administratrix of the Estate of Jennie Faye Rolen, Deceased, and Bessie Tillery, Appellants

v.

Charlie **GARDNER**, Appellee.

No. CA 11–388.

Court of Appeals of Arkansas.

Nov. 30, 2011.

Clifford Joseph Henry, Conway, for appellant.

Melvin E. Morgan, Clinton, for appellee.

CLIFF HOOFMAN, Judge.

This case involves a long-running and sometimes violent family dispute over a tract of land in Van Buren and Stone Counties. Appellant Bessie Tillery and appellee Charlie Gardner are two of the eight children of Thomas Gardner, who died in 1961, leaving a large tract of land, which included the disputed twenty-eight acres in Van Buren County, to pass by intestacy. Thomas was survived by his eight children and his wife, Nina Gardner. His other children were Steve Gardner, Zillah Rooney, Jessie Gardner, Earnest Gardner, Jennie Faye Rolen, and Mary Bramlett. Appellant Hazel Sutton is the administratrix of the estate of Jennie Faye Rolen. Appellants appeal from the circuit court's order quieting title to a portion of the disputed property in appellee. Although we affirm the circuit court's decision, we do so for a different reason than that given by the circuit court.

On December 8, 1983, Nina gave a quitclaim deed to Zillah, which contained the following description:

THAT I, Nina Gardner GRANTOR, for and in consideration of the sum of One Dollar ($1.00) and other consideration DOLLARS, ($1.00) in hand paid by Zillah Rooney GRANTEE, the receipt of which is hereby acknowledged, do hereby grant, convey, sell and quitclaim unto the said GRANTEE, and unto her heirs, and assigns forever, all my right, title, interest and claim in and to the following lands lying in Van Buren County, Arkansas: All real property which I own and which is located in Section 24, Township 13 North; Range 14 West of the Fifth Principal Meridian, Arkansas. Said real estate totaling [sic] 28 acres, more or less.

Zillah conveyed her one-eighth interest, and the interest she received from her mother by quitclaim deed, to appellee on November 1, 1988. This deed contained the following language:

THAT I, Zillah Ronney [sic], single person, hereinafter called Grantor, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration to me in hand paid by Charlie Gardner and Ruth Gardner, his wife, hereinafter called Grantee, do hereby grant, sell and quitclaim unto said Grantee and Grantee's heirs and assigns forever, the following described land, situate [sic] in Van Buren County, State of Arkansas to-wit: Part of the Southeast quarter of Northeast quarter of Section 24, Township 13 North, Range 14 West of the Fifth Principal Meridian, totalling [sic] 28 acres more or less.

On October 31, 1988, Jessie Gardner and his wife, Wanda, conveyed their interest in the property to appellee in a quitclaim deed that contained the following language:

THAT WE, Jessie Gardner and Wanda Lee Gardner, husband and wife, hereinafter called Grantors, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration to us in hand paid by Charlie Gardner and Ruth Gardner, his wife, hereinafter called Grantee, do hereby grant, sell and quitclaim unto the said Grantee and Grantee's heirs and assigns, the following described land, situate [sic] in Van Buren County, State of Arkansas, to-wit: Part of the Southeast quarter of the Northeast quarter of Section 24, Township 13 North, Range 14 West of the Fifth Principal Meridian, totalling [sic] 28 acres more or less.

The family has engaged in litigation over this property more than once. Most recently, a partition action filed by Jennie Faye Rolen, Bessie Tillery, and Mary Bramlett in 1994 was dismissed without prejudice on November 20, 2001. In the 1994 action, appellee was a defendant. In his answer, he raised the affirmative defense of adverse possession. Bessie filed this action against Hazel, appellee, and other heirs on November 1, 2005. In her petition for partition, Bessie asked the circuit court to order the property sold and the proceeds distributed to the parties, according to their ownership interests. Appellee raised the affirmative defenses of laches, statute of limitations, res judicata, and adverse possession. Appellee filed a counterclaim asking the court to quiet title to the entire twenty-eight acres in him. He asserted that he had color of title for more than forty-five years; had paid taxes on the property continuously since 1961; and had adversely possessed the property. In her answer to appellee's counterclaim, Hazel argued that appellee was not entitled to have the title confirmed in him because of his unclean hands. She asserted that he had made "numerous threats . . . against various people. . . ."

In her response to the amended petition for partition, Hazel alleged that the deeds from Nina to Zillah; Zillah to appellee; and Jessie and Wanda to appellee were void because their legal descriptions were so vague that the property to be conveyed could not be located from the faces of the deeds. Appellee moved for summary judgment, arguing that this action was barred by the seven-year statute of limitations found in Arkansas Code Annotated section 18–61–101 and the doctrine of laches. He also asserted that, because the partition action dismissed in 2001 had not been refiled within one year, pursuant to Arkansas Code Annotated section 16–56–126, it was barred.

On January 4, 2010, the circuit court dismissed Bessie's partition petition on the ground that the statute of limitations and the one-year period for refiling after the 2001 dismissal without prejudice had expired. It continued the case on appellee's

counterclaim for quiet title. The court held a bench trial on the counterclaim on March 9, 2010. Appellee and his daughters, Kelly Gardner and Merlene Gardner, testified on appellee's behalf. Appellants also testified. Appellee presented evidence that he has occupied the property since his mother died and treated it as his own, making improvements, cutting fire wood, hauling and selling rock, farming, and raising livestock. He also presented evidence that, with the exception of a few years, he paid taxes on the property from the 1970s through 2009. He does not dispute that Jennie Faye paid the taxes in 1998 and 1999, and that Bessie paid them in 2003 and 2004.

On December 15, 2010, the circuit court entered its findings of fact and conclusions of law, analyzing the validity of the legal descriptions in the quitclaim deeds in light of *Ketchum v. Cook,* 220 Ark. 320, 247 S.W.2d 1002 (1952). Based on its understanding of *Ketchum,* the court ruled that the quitclaim deed from Nina to Zillah was sufficient color of title because it contained the phrase "all real property which I own." Although the deed from Zillah to appellee did not contain that phrase, the court found that it was sufficient because the previous deed from Nina to Zillah was sufficient under *Ketchum.* The court found that the deed from Jessie Gardner to appellee was insufficient. It granted appellee's claim for quiet title to the property he obtained from Zillah. Appellants filed a timely notice of appeal. They have not challenged the court's dismissal of their claim for partition, and appellee has not filed a cross-appeal from the circuit court's ruling that his deed from Jessie was void.

Quiet-title actions have traditionally been reviewed de novo as equity actions. *Rio Vista, Inc. v. Miles,* 2010 Ark. App. 190, 374 S.W.3d 698. However, findings of fact will not be reversed unless they are clearly erroneous. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Machen v. Machen,* 2011 Ark. App. 47, 380 S.W.3d 497.

Appellants argue in their first point that the trial court erred in refusing to dismiss appellee's counterclaim because it was barred by the saving statute, Arkansas Code Annotated section 16–56–126(a)(1) (Repl.2005), which provides that if the plaintiff suffers a nonsuit in an action filed within the statute of limitations, he may commence a new action within one year after the nonsuit. It is undisputed that none of the plaintiffs in the earlier action refiled it within one year after it was dismissed in 2001. Citing Arkansas Rule of Civil Procedure 8(c) and (f) (2011), appellants argue that the saving statute applied to appellee, who was a defendant in that action, because his affirmative defense of ownership of the property by virtue of his deeds or, in the alternative, by adverse possession, was in essence a counterclaim; therefore, appellee was a plaintiff subject to the terms of the saving statute.

We disagree. Adverse possession is a type of affirmative defense that must be specifically pled. *Bobo v. Jones,* 364 Ark. 564, 222 S.W.3d 197 (2006). As explained in the Reporter's note 6 to Rule 8(c), when a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court has discretion to allow a counterclaim or affirmative defense. Rule 8(f) provides that all pleadings "shall be liberally construed so as to do substantial justice." There is nothing in the record to suggest that the court in the 1994 action treated appellee's affirmative defense as a counterclaim. In any event, the nonsuit in 2001 did not affect the statute of limitations, which has not begun to run on appellee's quiet-title

claim, because he is still in possession of the property. *See Shelton v. Jack,* 239 Ark. 875, 395 S.W.2d 9 (1965); *Eades v. Joslin,* 219 Ark. 688, 244 S.W.2d 623 (1952); Ark.Code Ann. § 18–61–101(a) (Repl.2003).

Appellants further contend that the effect of section 16–56–126 was to render the previous dismissal an adjudication on the merits; therefore, the trial court erred in denying their motion to dismiss appellee's counterclaim because it was barred by the doctrine of res judicata. Under the claim-preclusion aspect of res judicata, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. *Crockett v. C.A.G. Invs., Inc.,* 2011 Ark. 208, 381 S.W.3d 793. Claim preclusion bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated. *Id.* Where a case is based on the same events as the subject matter of a previous lawsuit, claim preclusion will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* The purpose of the res judicata doctrine is to put an end to litigation by preventing a party who had one fair trial on a matter from relitigating the matter a second time. *Id.*

Appellants contend that, because appellee had the opportunity to litigate his quiet-title claims in the 1994 lawsuit, they are now barred by claim preclusion. *See Hardy v. Hardy,* 2011 Ark. 82, 380 S.W.3d 354. There is no merit in this argument. A dismissal without prejudice is not an adjudication on the merits. *Crooked Creek, III, Inc. v. City of Greenwood,* 352 Ark. 465, 101 S.W.3d 829 (2003); *Magness v. McEntire,* 305 Ark. 503, 808 S.W.2d 783 (1991); *Bell v. Hoofman,* 2010 Ark. App. 377, 375 S.W.3d 668. An involuntary nonsuit under Ark. R. Civ. P. 41(b), when there has not been a previous dismissal, is not an adjudication on the merits for the purpose of res judicata. *Croney v. Lane,* 99 Ark. App. 346, 260 S.W.3d 316 (2007); *see also Middleton v. Lockhart,* 344 Ark. 572, 43 S.W.3d 113 (2001). In their reply brief, appellants argue that, under Arkansas Rule of Civil Procedure 41 (2011), the dismissal of the 1994 lawsuit was an adjudication on the merits because previous actions had been dismissed. We disagree, because there is nothing in the record indicating that appellee previously had a claim dismissed.

Next, appellants contend that, because (1) appellee did not refile his alleged counterclaim (his affirmative defense) before November 21, 2002, and (2) the previous dismissal was an adjudication on the merits, all of appellee's claims existing at that time are barred by res judicata, and the seven-year period for adverse possession began to run again on that date. They also argue that the trial court erred in refusing to rule that appellee's adverse-possession counterclaim was premature because Bessie filed this action on November 1, 2005, before the seven-year period had run.

We disagree with all of these contentions. As discussed above, appellee was not required to file his counterclaim before November 21, 2002, and the previous dismissal was not an adjudication on the merits. Further, "[i]n computing the period of adverse possession of land, the time of pendency of any dismissed, abandoned, or otherwise discontinued action in respect to the property is to be treated as though the action had never been instituted." 3 Am.Jur.2d *Adverse Possession* § 109 (2002). Thus, appellee's actions regarding the property prior to November

21, 2002, are relevant, and his adverse-possession claim was not premature. Even though the trial court did not base its decision on common-law adverse possession, it is clear from the evidence presented by both parties that appellee established common-law adverse possession of the property, and we affirm on this basis. *See Tiner v. Tiner*, 2011 Ark. App. 478, 385 S.W.3d 326.

■■■■ Adverse possession is governed by both common and statutory law. To prove the common-law elements of adverse possession, a claimant must show that he has been in possession of the property continuously for more than seven years and that his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Smith v. Smith*, 2011 Ark. App. 598, 385 S.W.3d 902; *Trice v. Trice*, 91 Ark.App. 309, 210 S.W.3d 147 (2005). It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another. *Id.* Whether possession is adverse to the true owner is a question of fact. *Id.* In 1995, the General Assembly added, as a requirement for proof of adverse possession, that the claimant prove color of title and payment of taxes on the subject property or contiguous property for seven years. *See* Ark.Code Ann. § 18–11–106 (Supp.2011). However, if the claimant's rights to the disputed property vested before 1995, he need not comply with the 1995 statutory change. *See Schrader v. Schrader*, 81 Ark.App. 343, 101 S.W.3d 873 (2003).

■■■■ Additional factors come into play when one co-tenant asserts adverse possession against the others, because the possession of one tenant-in-common is the possession of all. *Trice, supra.* Because possession by a co-tenant is not ordinarily adverse to other co-tenants, each having an equal right to possession, a co-tenant must give actual notice to other co-tenants that his possession is adverse to their interests or commit sufficient acts of hostility so that their knowledge of his adverse claim may be presumed. *Id.* The statutory period of time for an adverse-possession claim does not begin to run until such knowledge has been brought home to the other co-tenants. *Id.* There is no hard-and-fast rule by which the sufficiency of an adverse claim may be determined; however, the court considers factors such as the relationship of the parties, their reasonable access to the property, kinship, and innumerable other factors to determine if non-possessory co-tenants have been given sufficient warning that the status of a co-tenant in possession has shifted from mutuality to hostility. *Id.* When there is a family relation between co-tenants, stronger evidence of adverse possession is required. *Id.*

Appellee met his burden of establishing adverse possession against his co-tenants before the 1995 statute became effective. It is true, as appellants point out, that appellee did not personally live on this property for the entire period of time since his mother died. He and his wife built two houses in Stone County, where they still live. However, he and his daughters testified that everyone (family members and renters)who has lived on the property since that time has done so with appellee's permission. Kelly testified that she and her husband were the first persons to move there, about one or two years after her grandmother died. She said that appellee had rented the house to other people; Merlene, their sister Carolyn, and Wanda and Leonard Holly had also lived there. She said, "My dad ... let each one of us ... or, ... people in need that ... would take care of it ... and treat it

right cause that was his place and everybody knows that...." Appellee testified that he had controlled the property over forty years and had used it as if it were his. He said that, except for a couple of years, he had paid taxes on the property from the 1970s through 2009. He stated that, over the years, he had added a bathroom and a new roof to the house; run livestock; cut and sold firewood; sold a few loads of rock; drilled a well; and built fences around the property. Kelly and Merlene corroborated appellee's testimony.

Appellants helped appellee establish his claim of adverse possession. Bessie stated, "Charlie ... used it like it was his. He didn't ask nobody. He didn't divide up the house stuff. He took it all." She said that appellee had threatened her and would not let her or the other siblings come onto the property after their mother died. "He said he'd shoot us," she stated. Hazel testified that she had heard appellee threaten her mother "to either leave the property alone and get out of the court system ... or he was going to kill her." She added that, in addition to Charlie, her mother and her mother's siblings claimed an interest in this property but had not possessed it because of "threats and actions that's been taken from him or members of his family. They're not allowed onto the property."

In light of this evidence, we hold that appellee established that he began exclusively using the property, with hostile intent that was thoroughly understood by his co-tenants, more than seven years before 1995, and therefore, his claim vested before the 1995 statute became effective. We need not, therefore, address appellants' arguments concerning color of title and payment of taxes.

In their last point, appellants argue that the trial court erred in failing to hold that appellee's claims were barred by the doctrine of unclean hands, citing threats that appellee made against Bessie and other family members claiming an interest in the property. Because the trial court did not rule on this issue, we do not address it. *Light v. Duvall*, 2011 Ark. App. 535, 385 S.W.3d 399.

Affirmed.

GLADWIN and ROBBINS, JJ., agree.