2012 Ark. App. 469

**Kevin HORTON and Laurie Horton, Appellants**

v.

**Brent TAYLOR, Robin Taylor, et al., Appellees.**

**No. CA 11–1118.**

Court of Appeals of Arkansas.

Sept. 12, 2012.

Jerry D. Patterson, Marshall, for appellant.

Blagg Law Firm, Clinton, by: Ralph Blagg and Nicki Nicolo, for appellee.

JOHN MAUZY PITTMAN, Judge.

This dispute involves two separate parcels of land in Searcy County. Appellants Kevin Horton and Laurie Horton claimed an easement along a path over land belonging to appellees Brent Taylor and Robin Taylor. The parties' tracts are contiguous and were once owned by the Mason family. The circuit court denied that claim. Appellants also claimed adverse possession of land lying north of a fence that crosses a pond on a separate five-acre tract owned by appellees Jim Taylor and Duford Taylor, who, along with Rosalee Taylor and Corrine Taylor, sought to quiet title. The five-acre tract, which is surrounded by appellants' property on the west, north, and east, has no fence across its northern boundary. Although the circuit court denied appellants' adverse-possession claim, it granted them an easement across this property. We affirm the circuit court's orders.

The path along which appellants claimed an easement begins where a driveway branches off a county road and continues across Brent's and Robin's property to a fence with a gate at the boundary line. The circuit court first heard the easement claims at a hearing at which Kevin, Jimmy Hensley (who delivered mail to the Masons), Anthony Redman (Kevin's cousin), Ronnie Harness (a friend of Kevin), Jackie Sanders (an old friend of the Horton family), Rita Brown (Stella Mason's niece), Donald Brown (Rita Brown's husband), Jim Taylor, Russell Podgorney (a surveyor), Duford, Jeff Magness (who performed dozing work for the Hortons), Leroy McInturff (who helped clear the Mason property in 1932), and Brent testified. After the testimony was concluded, the sheriff drove the trial judge to view the possible means of access to appellants' property. The trial judge found that there was an alternative way for appellants to access their property and denied their claim for an easement. Appellants took an appeal to this court, which dismissed for lack of a final order. *See Horton v. Taylor*, 2010 Ark. App. 824, 2010 WL 4983142. The circuit court then held a trial on the remaining claims. Duford, Jim, Alvin Bolen (with the sheriff's office), Brent, Kevin, James Carter (who was acquainted with appellants' predecessor), Ronnie, and Jimmy Hensley testified. The trial court denied appellants' claim for

adverse possession, quieted title to the entire five acres in appellees, and granted appellants an easement. Appellants then pursued this appeal.

▮ Appellants argue that the trial court erred in rejecting their claims for an easement by prescription, implication, and necessity, and for adverse possession. The only question on appeal is whether the trial court's findings are clearly erroneous. We review equity cases de novo on the record, and will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Baker v. Bolin*, 2012 Ark. App. 141, 2012 WL 474527. Disputed facts and determinations of witness credibility are within the province of the fact-finder and, in reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*

In their first point, appellants contend that the trial court erred in rejecting their claim for a prescriptive easement, on which it made the following findings:

Prescriptive Easement: The Plaintiff failed to meet its burden to prove a prescriptive easement. There was insufficient evidence that the use was open and hostile. The alleged easement begins with what was described as a circular drive where at the back end to the left side of the drive was a straight path that one could follow to the Plaintiff's property. There was evidence that a school bus accessed the small circular drive along with the mailman who delivered mail. This is insufficient to prove the easement the Plaintiff is claiming. First, the mail and school use of the circular area path was for the benefit of the Defendant's predecessor in title. There was no evidence that the mail or school routes were 1) for the benefit of plaintiff or his predecessors in title or 2) that the mail or school route went the full length of the alleged easement to the Plaintiff's property. Rather, they accessed perhaps 5% of what Plaintiff alleges is an easement. Plaintiff did present evidence that the easement was utilized for the occasional hunter, his operation of a sawmill from approximately 2000–2003, and he has used it to access his property since 2003 until sometime in the last 2 years when a gate was put up. The Defendant, Duford Taylor, testified he permitted the prior use by the Plaintiff for the sawmill and the occasional hunter.

Permissive use can ripen into a prescriptive easement when the use is adverse to the landowner's interest for the statutory period of time. While the sawmill use could be considered adverse to the Defendant's interest, the use was only for a 3–year period. The Plaintiff simply could not prove the use was sufficiently hostile, notorious, and open by a preponderance of the evidence.

▮ A person not in fee possession of the land may obtain a prescriptive easement by operation of law in a manner similar to adverse possession. *Roberts v. Jackson*, 2011 Ark. App. 335, 384 S.W.3d 28. The statutory period of seven years for adverse possession applies to prescriptive easements. *Id.* In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Id.* Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Id.* Mere permissive use of an easement cannot ripen into an adverse claim without clear action, which places the owner on notice. *Id.* Some circumstance or act in addition to, or in connection with, the use which

indicates that the use was not merely permissive is required to establish a right by prescription. *Id.* The determination of whether a use is adverse or permissive is a factual question. *Id.* The plaintiff bears the burden of showing by a preponderance of the evidence that there has been adverse, not permissive, use of the land in question. *Dohle v. Duffield,* 2012 Ark. App. 217, 396 S.W.3d 780; *Roberts, supra.* Unlike adverse possession, prescriptive use need not be exclusive. *Johnson v. Jones,* 64 Ark.App. 20, 977 S.W.2d 903 (1998). Former decisions are of little value on the factual issue of whether a particular use is permissive or adverse. *Id.*

 The evidence supports the trial court's findings regarding the prescriptive-easement claim. From approximately 2000 to 2003, Kevin operated a sawmill on his property, which he accessed by using the path through the Masons' property without objection. He testified that he made improvements on the path, which was grown up with trees and brush, while he was operating the sawmill. According to Kevin, approximately three to five vehicles a day, plus eighteen-wheelers, used this path for about three years. Anthony testified that, with no one's objection, he had operated the sawmill and had helped open the road up so that big trucks could haul lumber along it. Ronnie testified that he had used this path to visit Kevin at the sawmill several times a week. Appellants, however, produced scant evidence of any prescriptive use of the road in other years, except for its occasional use by hunters. We therefore cannot say that the circuit court clearly erred in ruling that they did not establish prescriptive use of the property for a period of seven consecutive years, and affirm on this issue.

Appellants next challenge the trial court's ruling regarding an easement by implication. The court found:

An Easement by Implication arises where, during unity of title, a landowner imposes an apparently permanent and obvious servitude on part of his property in favor of another part and where, at the time of a later severance of ownership, the servitude is in use and is reasonably necessary for the enjoyment of that part of the property favored by the servitude. There was not sufficient evidence presented that there was an obvious servitude prior to the severance of ownership.

 An easement by implication arises where, during unity of title, a landowner imposes an apparently permanent and obvious servitude on part of his property in favor of another part and where, at the time of a later severance of ownership, the servitude is in use and is reasonably necessary for the enjoyment of that part of the property favored by the servitude. *Berry v. Moon,* 2011 Ark. App. 781, 387 S.W.3d 306. In order for such an easement to be established, it must appear not only that the easement is obvious and apparently permanent but also that it is reasonably necessary for the enjoyment of the property. *Id.* The term "necessary" in this context means that there could be no other reasonable mode of enjoying the dominant tenement without the easement. *Id.* The necessity for the easement must have existed at the time of the severance. *Id.* Further, the apparently permanent nature of the easement must be in existence at the time of common ownership. *Id.*

 The trial court found that there was not sufficient evidence of an obvious servitude prior to the severance of ownership, and we cannot say that this finding was clearly erroneous. Although there was testimony that the Masons used this path for access to their farm land, appellants offered no evidence that, at the time of severance, this path was necessary for

the use of that land. Also, appellees offered evidence that at the time of trial, usage of this path was not reasonably necessary, and it was reasonable to infer that this was true at the time of severance. We affirm on this point.

In their third point, appellants assert that the trial court's finding that they failed to establish an easement by necessity is clearly erroneous. The trial court explained:

An Easement by Necessity is similar to the above in requiring Plaintiff to prove 1) that title to the two tracts in question were once held by one person; 2) that unity of title was severed by conveyance of one of the tracts; and 3) that the easement is necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of severance of title and at the time of exercise of the easement. There was no question in this case that there was unity in title and that unity was severed upon conveyance by the original grantee.

The main question of fact in this case was whether an easement is necessary for the Plaintiff's use of his property. Whether an easement is necessary is a question of fact. The Supreme Court has held that "necessary" means there could be no other reasonable mode of enjoying the dominant tenement without the easement. The Plaintiff contended that he had no other means to access his property without going an additional 5–6 miles and he would be unable to take most vehicles across. He also contended that he would have to cross creeks and would be unable in heavy rain to access his property at all. The Defendant contended that there was alternative suitable path for Plaintiff to access his property. At the end of trial, this Court through agreement of the parties went to observe both the easement and the alternative path. The Court was in

a 4 wheel drive truck and able to completely access and follow the alternative path. There was one very small creek that was easily passable. The alternative path was substantially longer and had one steep hill. The Court finds that neither the easement nor the alternative path would be passable without a 4–wheel–drive vehicle. The Court does find there is an alternative means for Plaintiff to access his property. The Supreme Court has held that the alternative mode of access does not have to be the preferred or even the most convenient mode of access.

We agree with the trial court that the possibility of another, although inconvenient, route to appellants' property precluded the establishment of an easement by necessity. To establish an easement by necessity, a party must prove (1) that, at one time, one person held title to the tracts in question; (2) that unity of title was severed by conveyance of one of the tracts; and (3) that the easement is necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time the easement is exercised. *Berry, supra.* The degree of necessity must be more than mere convenience. *Id.* Whether something is reasonable is a question of fact. *See Ford Motor Credit Co. v. Ellison,* 334 Ark. 357, 974 S.W.2d 464 (1998); *Watkins v. Arkansas Elder Outreach of Little Rock, Inc.,* 2012 Ark. App. 301, 420 S.W.3d 477; *Crum v. Craig,* 2010 Ark. App. 531, 379 S.W.3d 71; *Mountain Pure, L.L.C. v. Affiliated Foods, Sw., Inc.,* 96 Ark.App. 346, 241 S.W.3d 774 (2006).

Kevin testified that there would be no way that he could transport cattle along the alternative path, which has steep terrain. He stated that he would have to use an all-terrain or a heavy-duty four-

wheel-drive vehicle, and that he could not use that path in bad weather. Anthony supported this testimony. Ronnie also testified that one could use the alternative route only on a four-wheeler. Leroy, who was familiar with the alternative route to appellants' property, described it as "a pretty rough way to go...." On the other hand, Duford testified that there was an alternative route to appellants' property. We also note that Kevin testified extensively about the bad condition of the path over which appellants seek an easement; in fact, at the time of the hearing, the evidence indicated that there was not a significant difference between the condition of that path and the alternative route. In light of this evidence and the fact that the trial judge personally viewed the property, we cannot say that this ruling was clearly erroneous.

In their last point, appellants argue (1) that the trial court's finding that they failed to prove adverse possession was clearly erroneous; and (2) that they established a boundary by acquiescence along the fence line. Because the trial court did not rule on acquiescence, we need not address it. *Sutton v. Gardner*, 2011 Ark. App. 737, 387 S.W.3d 185. The trial court made the following findings as to appellants' claim for adverse possession:

4. The Court finds that Counter–Plaintiffs Exhibit 3, which is a survey of the said five acres prepared for Duford Taylor and dated April 21, 2006, shows that there was not a fence on the north boundary line and that only part of the fence was on the east boundary line of the said five acres.

5. The Court finds the Hortons' and their predecessors' use of the three (3) acres, more or less, in the W 1/2 SW 1/4 SW 1/4 SE 1/4 of Section 10, Township 15 North, Range 17 West which lies north of the cross fence across the pond is insufficient to take from the Taylors ownership of the property. The Hor-

tons have failed to meet their burden to show that their use of the said property was adverse.

6. The Court however finds that a road easement exists over and across the W 1/2 SW 1/4 SW 1/4 SE 1/4 of Section 10, Township 15 North, Range 17 West on the said three (3) acres which lies north of the cross fence across the pond as evidenced by testimony and by a survey prepared for the Hortons which was introduced into evidence and marked as Plaintiffs Exhibit No. 6 at trial. The road easement shall be a 16 feet easement over and across the said three (3) acres and it shall follow the center line of the road and connect the Horton property on the east side with the Horton property on the west side as shown in the Horton survey.

7. The Taylors are directed and ordered to install and maintain a cattle guard on the east and west boundary line of the said five-acre tract to allow ingress and egress across the road easement. The cattle guards shall be at least twelve (12) feet wide. In the event the Taylors construct a fence on each side of the 16–foot road easement then the road easement shall be increased to 26 feet.

▮▮▮ Adverse possession is governed by both common and statutory law. To prove the common-law elements of adverse possession, a claimant must show that he has been in possession of the property continuously for more than seven years and that his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Sutton, supra.* It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another. *Id.* Whether

possession is adverse to the true owner is a question of fact. *Id.* In 1995, the General Assembly added, as a requirement for proof of adverse possession, that the claimant prove color of title and payment of taxes on the subject property or contiguous property for seven years. *See* Ark. Code Ann. § 18–11–106 (Supp.2011). However, if the claimant's rights to the disputed property vested before 1995, he need not comply with the 1995 statutory change. *Sutton, supra.*

Kevin testified that he owned and had paid taxes on land contiguous to the property in dispute and that he had been in possession of all the land lying north of the fence through the pond. He also said that he had bush-hogged, fertilized, cleared, and maintained that property, and that he had spent $3500 cleaning out the pond with Duford's and Jim's knowledge. He stated that his family had also maintained and used this property before he had acquired it. Ronnie supported this testimony. Duford, however, testified that his family had acquired the larger tract that includes the disputed property in 1918. He stated that the pond was originally nothing more than an old slough full of cattails and brush and that the fence through it was intended only to keep cattle from going into the field where his grandfather farmed, not as a boundary line. He also testified that he had given appellants permission to use the property on the other side of the fence so that their cattle would have access to water. Jim also testified that the fence was not intended to denote the boundary line.

The evidence supported appellees' position that appellants' and their predecessors' use of the property was permissive before the survey was completed in 2006; until the survey was done, there is scant evidence that appellees received notice of any adverse use. Like the other issues, this factual determination depended heavi-

ly upon the trial court's opportunity to observe the witnesses and assess their credibility. The trial court's finding that appellants failed to establish adverse possession was not clearly erroneous.

Affirmed.

GRUBER and HOOFMAN, JJ., agree.