SLIP OPINION

Cite as 2015 Ark. App. 681

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-418

| | |
|---|---|
| TERESA CAMILLE YOUNG AND JAMES LYNN CARSON<br><br>APPELLANTS<br><br>V.<br><br><br>ELMER L. ROBERTSON, JACK BURGESS, AND AUTUMN BURGESS<br>APPELLEES | **Opinion Delivered** December 2, 2015<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43CV-14-471]<br><br>HONORABLE SANDY HUCKABEE, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

On September 25, 2014, appellants Teresa Young and James Carson filed a complaint to establish an easement by prescription, necessity, or adverse use over land owned by appellees Elmer Robertson, Jack Burgess, and Autumn Burgess. Appellants alleged that they were landlocked in that there was no direct access and no reasonable means to access their property without use of an existing fifty-foot ingress-and-egress easement. The Lonoke County Circuit Court dismissed appellants' complaint. On appeal, appellants argue that the trial court erred in finding insufficient evidence to establish an easement by necessity.[1] We affirm.

### I. *Easement By Necessity*

To establish an easement by necessity, a party must prove (1) that, at one time, one

---

[1]Appellants have abandoned their other claims.

person held title to the tracts in question; (2) that unity of title was severed by conveyance of one of the tracts; and (3) that the easement is necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time the easement is exercised. *Horton v. Taylor*, 2012 Ark. App. 469, 422 S.W.3d 202. What the petitioner must show is a reasonable necessity for a road, not an absolute necessity. *Attaway v. Davis*, 288 Ark. 478, 707 S.W.2d 302 (1986). The degree of necessity must be more than mere convenience. *Horton*, *supra.* Whether an easement is necessary is a question of fact. *Id.* The supreme court has held that "necessary" means there could be no other reasonable mode of enjoying the dominant tenement without the easement. *Kennedy v. Papp*, 294 Ark. 88, 741 S.W.2d 625 (1987).

There is no dispute that the first and second requirements for an easement by necessity have been met. The property in question was once a fifty-acre tract owned by Lanny R. Pierce and Denise D. Clark, and the tract was severed by conveyance to the parties. The north side of the fifty-acre tract runs along Bratton Road, a public road. Appellants own a sideways J-shaped piece of land comprising the outer south and west sides of the tract, approximately 1,142 feet on the north side, and approximately 518 feet on the east side. The Wattensaw Bayou is located in the southwest corner of the tract. Robertson's property is a rectangular-shaped piece of land in the middle of the tract extending from the east side of the tract and touching the top of the "J." The Burgesses' square-shaped piece of land adjoins Robertson's in the northeast corner of the fifty-acre tract. Appellants' mobile home is located in the southeast corner of the tract, or inside the top of the "J." The existing easement,



accessed from Bratton Road, runs along the east side of the fifty-acre tract and crosses the land owned by the Burgesses and Robertson.

## II. *Hearing Testimony*

At a hearing held on December 9, 2014, the testimony established that Young had purchased thirty-five acres in May 2011 and that she and her boyfriend, Carson, lived in a mobile home on the property. They accessed the property via a road that crossed appellees' property. Young testified that, soon after she purchased the land, Robertson and Carson began having "heated altercations" over use of the road. Young stated that Robertson had not told her that she could not use the road but that he did install speed bumps in 2012. Young testified that, although she had 1,142.60 feet of frontage where her property adjoined Bratton Road, she could not access her property from there because the only dry area was on Robertson's property; however, Young conceded that she had never attempted to build a road there. Young stated that she had built a levee near the western end of Robertson's property but that it had breached. She said that part of her property was designated wetlands and that "you cannot get through there." Young testified that there was no other existing road and that she could not use her property if she had no access by way of the existing easement.

Jim Wilkerson testified that he did not "have a dog in this hunt" but that he was familiar with the fifty-acre tract because he had leased nearby property for twenty-six years. He stated that his leased land was designated wetlands but that he used it for hunting. He said, "You could build a road on [wetlands], but I wouldn't." After saying that it would be

"almost impossible" to build a road because the land was too wet, Wilkerson opined that it could take several hundred thousand dollars to build a road but that a road could be built "if you had the right stuff to do it with."

Scott Foster, a licensed land surveyor, testified that Wattensaw Bayou, designated as Zone A, comprising both floodplain and floodway, covered a portion of appellants' property. He stated that a road could be constructed in a floodplain with proper permits but that governmental regulations prohibited the building of a road through a floodway. He said, "A road absolutely cannot be put across a floodway."

Young was recalled to testify regarding a letter she had received from Roger Allen at the Army Corps of Engineers. She said that Allen had been contacted by Robertson about a possible violation for Young's building a levee on the wetlands. Young testified that she was told that the Corps had made "a preliminary jurisdictional determination" that a portion of her land "may be considered . . . wetlands" and that she should contact the Corps before doing any work. Young said that she concurred with the Corps's determination, so she did not respond to the letter. She did, however, speak with an employee at the Corps who advised her that she could apply for a permit but that it would likely be denied. Young stated, "I have not applied and am not going to."

Elmer Robertson testified that he began having confrontations with Carson soon after he and Young moved onto the land because of traffic. He stated that he had given appellants permission to use the easement "to be neighborly" but that they had abused the road by driving too fast, which resulted in potholes. Robertson, who works as a contractor, testified

4

 

that he thought appellants could build a road if they had the resources. He further testified that the portion of appellants' property with frontage on Bratton Road could hold a trailer at certain times of the year.

Jack Burgess testified that, since the appellants had moved onto the land, there was "tons of traffic and they speed and they're obnoxious." He stated that the traffic was ruining the road, which he believed would decrease the value of his property. Burgess stated that he builds roads for a living and that it would cost appellants approximately $14,000 to $18,000 to build a road. Burgess further stated that appellants could enjoy their property if they were willing to move their mobile home to the other side of the floodway and access the rest of their property by four wheelers and trucks.

At the conclusion of the hearing, the trial court took the matter under advisement and later entered an order dismissing appellants' complaint because there was insufficient evidence to establish an easement.

### III.    *Appellants' Arguments*

Appellants reargue the testimony from the bench trial and conclude that, "[b]ased on the uncontroverted testimony that the current road is the only way Appellants can access their home, the rest of their land is in a zone A floodway, and that they are not allowed to build a road over a zone A floodway on their land, the court erred when it dismissed their complaint. The evidence was overwhelming that this easement was in deed [sic] necessary to access their home and not a mere convenience."



IV.  *Standard of Review*

We review equity cases de novo on the record and will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Horton*, *supra*. A decision is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Sanford v. Sanford*, 355 Ark. 274, 137 S.W.3d 391 (2003). Disputed facts and determinations of witness credibility are within the province of the fact-finder and, in reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Horton*, *supra*.

V.  *Discussion*

As a preliminary matter, appellants alleged in their complaint that, without the easement, they cannot access their property and that they are landlocked. "Landlocked" is a term applied to a piece of land belonging to one person and surrounded by land belonging to other persons, so that it cannot be approached except over their land. *Black's Law Dictionary*, 878 (6th ed. 1990). Appellants' property is not landlocked given that they have over 1,142 feet of land adjacent to a public road. Also, although appellants—as well as appellees—narrowly frame the issue on appeal as "whether the use of the roadway is necessary to the Appellants' use of *their mobile home* . . .," the question is whether the easement is "necessary in order for the owner of the dominant tenement to use his land." *Horton*, 2012 Ark. App. 469, at 7, 422 S.W.3d 202, 208. The parties do not provide any authority to the contrary.

Young testified that she had neither attempted to build a road nor applied for permission to build a road because she thought her application would be denied. The letter from the Army Corps of Engineers does not forbid appellants to build a road, and the National Flood Insurance Programs regulations, which were introduced into evidence, do not appear to prohibit the building of a road either. Appellees, who both worked in construction, and Wilkerson testified that it was possible, albeit perhaps not the most desirable option, to build a road from Bratton Road such that appellants could enjoy their property. On the other hand, the testimony by appellants' expert established that a road absolutely cannot be built in a floodway. It was the trial court's duty to determine credibility and to weigh the conflicting testimony. *Horton*, *supra*.

The trial court could have concluded that alternate routes to access appellants' property existed and that appellants had simply not explored those possibilities. *Id*. (holding that possibility of another, although inconvenient, route to appellants' property precluded establishment of easement by necessity); *Berry v. Moon*, 2011 Ark. App. 781, 387 S.W.3d 306 (holding that possibility of another route to appellees' backyard, including testimony by appellee that there was at least one other possible route that had not been fully investigated, precluded establishment of easement by necessity); *Orr v. Orr*, 2009 Ark. App. 578 (denying easement by necessity where evidence was conflicting as to availability of alternative routes to appellants' properties and request appeared to be driven more by convenience than necessity). Giving due deference to the trial court's superior position to make credibility determinations and weigh the evidence, we cannot say that the trial court clearly erred in



determining that an easement was not necessary under these circumstances.

Affirmed.

KINARD and HOOFMAN, JJ., agree.

*Chad M. Green*, for appellants.

*Baker, Schulze, Murphy & Patterson*, by: *J. G. "Gerry" Schulze*, for appellees.