Cite as 2022 Ark. App. 314

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-21-303

| | |
|---|---|
| ARKANSAS COUNTY BANK, DEWITT, AS TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF GODFREY THOMAS; ARKANSAS COUNTY BANK, DEWITT, AS TRUSTEE OF THE GODFREY THOMAS TESTAMENTARY TRUST; GODFREY THOMAS FOUNDATION, INC.; TATE PFAFFENBERGER; LES PFAFFENBERGER; TURNER FARMS IV; TURNER FARMS PARTERNSHIP; AND ROGER TURNER | Opinion Delivered September 7, 2022<br><br>APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. 01DCV-18-31]<br><br>HONORABLE DAVID G. HENRY, JUDGE<br><br>REVERSED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |
| APPELLANTS/CROSS-APPELLEES | |
| V. | |
| PIN OAK HUNTING CLUB, INC. | |
| APPELLEE/CROSS-APPELLANT | |

**STEPHANIE POTTER BARRETT, Judge**

This case concerns the ownership of real property in Arkansas County on which a levee is situated and whether appellee, Pin Oak Hunting Club, Inc. (Pin Oak), is entitled to a prescriptive easement across property owned by Thomas entities appellants and leased by Turner tenant appellants to access a portion of property owned by Pin Oak. Appellants Arkansas County Bank, DeWitt, as Trustee under the Last Will and Testament of Godfrey

Thomas and as Trustee of the Godfrey Thomas Testamentary Trust; Godfrey Thomas Foundation, Inc. (collectively "Thomas entities"); Tate Pfaffenberger; Les Pfaffenberger; Turner Farms IV; Turner Farms Partnership; and Roger Turner (collectively "Turner tenants"), appeal from the Arkansas County Circuit Court's finding that Pin Oak established a prescriptive easement; alternatively, they argue that if an easement has been established, it should be an easement in gross, not appurtenant, and specific limitations consistent with prior use should have been imposed. On cross-appeal, Pin Oak argues that the circuit court erred in finding that the Thomas entities adversely possessed property owned by Pin Oak and in denying Pin Oak an easement by necessity over the Thomas entities' property. We reverse on direct appeal and affirm on cross-appeal.

Pin Oak owns real property located in sections 14 and 15, township five south, range four west, in the southern district of Arkansas County, Arkansas. The Thomas entities own real property lying north and east of, but adjacent to, the Pin Oak property. The Turner tenants lease the Thomas entities' property at issue in this appeal. A levee runs roughly along the southern border of the Thomas entities' property and the northern border of Pin Oak's property. The controversy began in late 2016, when the Pfaffenberger brothers, who subleased a portion of the Thomas entities' property from Roger Turner, a tenant of the Thomas entities, blocked the road and levee Pin Oak used to access the Hot Springs Club property, which it purchased in 1989, with earthen berms across the roadway and levee road, and, according to Pin Oak, continued to interfere with its right to use and access its property by blocking access to the levee and road that had been used by Pin Oak for many years. A

survey commissioned by Pin Oak and the Thomas entities revealed that a portion of the levee was situated on Pin Oak property.

Pin Oak filed suit against the Thomas entities and the Turner tenants, requesting a declaratory judgment that it was the legal owner of the levee and established roadway; alleging the boundary had been established by acquiescence as the center of the levee; and it had established an easement by prescription to travel over the levee and on a trail leading to the Hot Springs Club property, or alternatively, it was entitled to an easement by necessity to travel over the levee system and the trail to the Hot Springs Club property. The Thomas entities and the Turner tenants filed a counterclaim alleging that the levees were built wholly on the Thomas entities' property approximately fifty feet from the property boundary line and seeking to quiet title in the Thomas entities; they asserted that the levees had been maintained since the 1960s by the Turner tenants; that permission to use the levee for access to Pin Oak property had been requested and denied multiple times; and that while a survey suggested a portion of the southern levee crossed the boundary onto Pin Oak property, the accuracy of the survey was disputed by both parties. Alternatively, the Thomas entities and the Turner tenants claimed that they had been in actual possession of the levees and the real property they were built on since at least 1962; and that the possession was open, continuous, exclusive, and with the intent to hold the real property adversely against anyone who may claim to be the owner. The Thomas entities alleged that the Turner tenants had continuously and openly repaired and maintained the levees since at least 1962, and the maintenance work was completed on the entire levee. The Thomas entities also claimed that

they had established a boundary by acquiescence as the southern base of the levee on the southern end of the Thomas entities' property because they had been solely responsible for maintaining and repairing the levee, for mowing the levee, and keeping the pathway on the levee usable for over fifty years.

After a bench trial, the circuit court filed a letter opinion on March 19, 2020, and filed an order on December 2, 2020, incorporating the letter-opinion findings into the order. The circuit court found that Pin Oak had established a prescriptive easement for ingress and egress across the real property owned by the Thomas entities in order to access its property; the use of the easement would be consistent with prior use; and the easement was appurtenant. The circuit court stated in its letter opinion that its decision on this issue was based on the fact that it found testimony of several longtime Pin Oak members concerning the long-time use of the levee and trail to the Hot Springs Club property on the issue of the prescriptive easement to be credible, while finding the testimony of Tate and Les Pfaffenberger, subtenants, to be inconsistent.

The circuit court further found that the Thomas entities established ownership of the levee system located along the previously surveyed northern boundary of Pin Oak's property, and to the extent any of the levee fell within the previously surveyed boundaries of Pin Oak's section 14 or 15 property, the Thomas entities had established ownership of the levee by adverse possession. The circuit court found that evidence at trial indicated Godfrey Thomas had built the levee system as early as the 1940s, and he and his successors had treated the levee system as their own since that time. All other claims of the parties were dismissed with

4

prejudice. The Thomas entities and Turner tenants filed their notice of appeal on December 11, 2020, and Pin Oak filed its notice of cross-appeal on December 18, 2020.

## I. *Standard of Review*

Matters sounding in equity are reviewed by this court de novo on the record with respect to questions of both law and fact, but a circuit court's findings of fact will not be reversed unless they are clearly erroneous. *Strange v. Mary K. Reed Tr.*, 2014 Ark. App. 333. A circuit court's finding of fact is clearly erroneous when, despite supporting evidence in the record, the appellate court, viewing all of the evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing a circuit court's findings of fact, the appellate courts give due deference to the circuit court's superior position to determine witness credibility and the weight to be accorded each witness's testimony. *Id.*

## II. *Direct Appeal*

The Thomas entities and Thomas tenants first argue that the circuit court erred when it found that Pin Oak established a prescriptive easement. In *Clark by and Through Clark v. Eubanks*, 2019 Ark. App. 49, at 3–4, 570 S.W.3d 506, 508–09 (citations omitted), this court explained the elements required for a prescriptive easement:

> A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that his or her use has been adverse to the true owner and under a claim of right for the statutory period. The statutory period of seven years for adverse possession applies to prescriptive easements.

> Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim of right are being exerted. Mere

permissive use of an easement cannot ripen into an adverse claim without clear action, which places the owner on notice. Some circumstance or act in addition to, or in connection with, the use that indicates the use was not merely permissive is required to establish a right by prescription. The plaintiff bears the burden of showing by a preponderance of the evidence that there had been adverse, not permissive, use of the land in question.

Like adverse possession, "prescriptive easements . . . are not favored in the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons." *Pop-A-Duck, Inc. v. Gardner*, 2022 Ark. App. 88, at 9, 642 S.W.3d 220, 227 (quoting *Carson v. Cnty. of Drew*, 354 Ark. 621, 625, 128 S.W.3d 423, 426 (2003)). Whether use is adverse or permissive is a factual question. *Anita G., LLC v. Centennial Bank*, 2019 Ark. App. 217, 575 S.W.3d 561. There is a presumption of permissive use if land is unenclosed and undeveloped; however, this presumption can be rebutted if the user shows hostility of conduct in the usage of the land. *Id.* In *Fullenwider v. Kitchens*, 223 Ark. 442, 266 S.W.2d 281 (1954), our supreme court reasoned,

> The reason for the rule that a passageway over unenclosed and unimproved land is deemed to be permissive is sound and also easily understandable. . . . It assumes that the owner of such land in many instances will not be in position to readily detect or prevent others from crossing over his land, and, even if he did, he might not enter any objection because of a desire to accommodate others and because such usage resulted in no immediate damage to him. Also in such instances the landowner would probably have no reason to think the users of the passageway were attempting to acquire any adverse rights.

Use of a roadway over unenclosed and unimproved land is deemed to be permissive and not adverse to the owners of the land. *Burdess v. Ark. Power & Light Co.*, 268 Ark. 901, 597 S.W.2d 828 (1980). Although permissive use of a roadway can ripen into adverse use, there

6

must be some overt activity on the part of the user to make it clear to the owner of the property that an adverse use and claim of right is being exerted. *Id.*

Although the structure in the present case is a levee and a pathway to the Hot Springs Club property rather than an actual roadway, the analysis is still the same. While the circuit court did not specifically state in its order that the land was unenclosed and unimproved, it cannot seriously be argued that it was anything else. Therefore, there is a presumption that the use of the levee was permissive. The question then becomes whether Pin Oak rebutted the permissive-use presumption. Although the circuit court did not specifically state that it found Pin Oak had rebutted the presumption, such a finding can be inferred because it found that Pin Oak was entitled to a prescriptive easement. The circuit court is presumed to know and follow the law. *C.J.M. v. State*, 2017 Ark. App. 477, 531 S.W.3d 412.

Testimony at trial indicated that the vegetation and trees were thick, and none of the Thomas tenants remembered seeing Pin Oak members on the levee. The Pin Oak members who testified all stated that they never asked permission to use the levee as a passageway. They all believed the levee was the property boundary line, but after Pin Oak purchased the Hot Springs Club property in 1989, Pin Oak members used the levee for access to the Hot Springs Club property when the water levels were too low to access the property by boat because it was the only reasonable way to gain entry to that property. One member testified that there was a defined path to the Hot Springs Club property. Another member testified that he was told that the Hot Springs Club members used the levee to access its property, and another member testified that the Hot Springs Club members accessed the property by

7

using the levee access because there was no boat access at that time. Pin Oak members testified that they used the levee every weekend during duck-hunting season when the water was not high enough to use a boat, they deer hunted and fished on the property during the year, and they also performed maintenance on boats and blinds during the off season.

At trial, Tate Pfaffenberger testified that he never saw anyone on the levees. However, when confronted with his deposition testimony that it was obvious that Pin Oak members were using the levees and the road because of ATV tracks, he did not remember saying that. Les Pfaffenberger testified that he never saw anyone on the levees when he was deer and duck hunting until 2016, when he saw signs of trespassing and placed berms on the levee. On cross-examination, Les denied saying in his deposition that he had noticed four-wheeler tracks on the levee from time to time over the last twenty years.

As previously stated, there is a presumption that use of the levee was permissive, and that Pin Oak had the burden to rebut that presumption. Based upon the record on appeal, we hold that Pin Oak failed to rebut the presumption that such use was permissive and not adverse. In reaching our conclusion, we are mindful that the circuit court found the testimony of the Pin Oak members credible and the Pfaffenberger brothers' testimony inconsistent. Despite the credibility finding, Pin Oak did not rebut the presumption that the use of the levee was anything but permissive. There was no overt activity on the part of Pin Oak members to clearly indicate to the Thomas entities or the Turner tenants that they were using the property adversely or exerted a claim of right to the property other than a permissive use of the levee to access the Hot Springs Club property. The finding that Pin

8

Oak was entitled to a prescriptive easement was clearly erroneous. For this reason, we reverse the circuit court's finding that Pin Oak was entitled to a prescriptive easement over the Thomas entities' property.

The Thomas entities and Turner tenants alternatively argue that if the prescriptive easement is affirmed in Pin Oak's favor, such an easement should be in gross rather than appurtenant, and the circuit court erred in not imposing specific limitations on the easement's use rather than granting a prescriptive easement "consistent with prior use." Given our holding that the circuit court clearly erred in granting Pin Oak a prescriptive easement, it is unnecessary to address these arguments.

### III. *Cross-Appeal*

Pin Oak argues on cross-appeal that the circuit court erred in finding that the Thomas entities established adverse possession of the portions of the levee system that the commissioned survey indicated were on Pin Oak's property. We hold that the circuit court's decision on this matter was not clearly erroneous. Adverse possession is governed by both common law and statute. The common-law elements of adverse possession require a claimant to show he has been in possession of the property in question continuously for more than seven years, and his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Muldrew v. Duckett*, 2013 Ark. App. 304. Whether possession was adverse to the true owner is a question of fact; proof that the claimant's acts of ownership are of such a nature as one would exercise over his own

9

property and would not exercise over the land of another is ordinarily sufficient proof of adverse possession. *Id.*

Pin Oak first argues that the Thomas entities failed to establish color of title and pay taxes on the property they now claim adversely. In 1995, the General Assembly added a statutory requirement[1] for proof of adverse possession that the claimant prove color of title and payment of ad valorem taxes on the subject property or contiguous property for a period of seven years; however, if the claimant's rights to the disputed property vested prior to 1995, he need not comply with the statutory change. *Id.*

The levee at issue here was built by Godfrey Thomas sometime in the early 1940s, and Roger Turner began leasing the land in the early 1960s. Turner's lease and the Pfaffenberger brothers' sublease required them to perform maintenance on the levees, such as mowing, repairing washouts of the levee, and removing downed trees. Warren Jennings, Jr., president and CEO of Arkansas County Bank, which is the trustee of Godfrey Thomas's will and testamentary trust, testified that Godfrey Thomas Farms bore the expense of any major repairs on the levee, such as blown-out risers or rusted-out standpipes. The Pin Oak members who testified as well as the Pin Oak caretaker all stated that they did not maintain any portion of the levee at issue here, although there was testimony that the Pin Oak members maintained another levee belonging to them. The Thomas entities and the Turner tenants treated the levee as their own property, as they were the only entities maintaining

---

[1]Ark. Code Ann. § 18-11-106 (Repl. 2015).

10

the levee. Because there was no testimony that Pin Oak ever maintained the levee—only the Thomas entities and the Turner tenants—since at least the early 1960s, the seven-year period for adverse possession ran long before 1995; therefore, the Thomas entities are not required to prove color of title and payment of taxes.

Pin Oak also argues that Godfrey Thomas Farms paid the taxes on the Thomas entities' real property, but it was not a party to the dispute. However, the right of adverse possession vested long before the 1995 statutory amendment requiring the payment of taxes.

Pin Oak also argues that the circuit court erred in failing to grant it an easement by necessity. We hold that the circuit court's order was not clearly erroneous in denying Pin Oak's request. To establish an easement by necessity, a party must prove (1) that, at one time, one person held title to the tracts in question; (2) that unity of title was severed by conveyance of one of the tracts; and (3) that the easement is necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time the easement is exercised. *Young v. Robertson*, 2015 Ark. App. 681, 476 S.W.3d 856.

Pin Oak met requirements one and two by introducing into evidence deeds showing that all the property was at one time owned by the same person and that unity of title was severed. However, we hold that Pin Oak's argument fails on the third requirement to prove an easement by necessity—that the easement is necessary in order for Pin Oak to use its land.

Pin Oak argues that there is no reasonable access to the Hot Springs Club property except by boat when the water is high enough or over the Thomas entities' property when

11

the water is too low. Pin Oak correctly asserts that our supreme court has held that when a parcel of land is accessible by a navigable body of water but not by road and motor vehicle, the accessibility via water does not defeat a showing of necessity. *Riffle v. Worthen*, 327 Ark. 470, 939 S.W.2d 294 (1997). However, the possibility that alternate routes to the property exist that might be more inconvenient does preclude the finding of an easement by necessity. *Young, supra; see also Horton v. Taylor*, 2012 Ark. App. 469, 422 S.W.3d 202 (holding that possibility of another, although inconvenient, route to appellants' property precluded establishment of easement by necessity); *Berry v. Moon*, 2011 Ark. App. 781, 387 S.W.3d 306 (holding that possibility of another route to property that had not been fully investigated precluded establishment of easement by necessity); *Orr v. Orr*, 2009 Ark. App. 578 (denying easement by necessity on conflicting evidence that there were possibilities of alternative routes that were not as convenient as the one sought to be established by an easement by necessity). Pin Oak member Joel Fox admitted that Pin Oak might be able to build a slightly elevated path that would permit the members to access all of their hunting holes by four-wheelers during low-water periods—if a permit could be obtained from the U.S. Army Corp of Engineers—but argued it would not be feasible. Because there were possibly other routes to the Hot Springs Club property that Pin Oak had not investigated, we hold that the circuit court's order denying Pin Oak's request for an easement by necessity was not clearly erroneous.

Reversed on direct appeal; affirmed on cross-appeal.

KLAPPENBACH and HIXSON, JJ., agree.

12

*Hyden, Miron & Foster, PLLC*, by: *Lyle D. Foster*, *Guy W. Murphy Jr.*, and *Sam Patterson*;

and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants/cross-appellees.

*Ark Ag Law, PLLC*, by: *J. Grant Ballard*, for appellee./cross-appellant.