2012 Ark. App. 698

**Ann Marvin CARNELL, Appellant**

v.

**ARKANSAS ELDER OUTREACH OF LITTLE ROCK, INC., Appellee.**

**No. CA 11–1188.**

Court of Appeals of Arkansas.

Dec. 12, 2012.

Rehearing Denied Jan. 16, 2013.

David A. Hodges, and Ludwig Law Firm, Little Rock, by: Gene Ludwig, for appellant.

Dover Dixon Horne, PLLC, Little Rock, by: Thomas S. Stone and Monte D. Estes, for appellee.

ROBERT J. GLADWIN, Judge.

This appeal involves the defense of charitable immunity raised by the operator of a nursing home, appellee Arkansas Elder Outreach of Little Rock, Inc. (AEO). Ann Carnell, special administrator of the estate of William Mason, brings this appeal from the entry of summary judgments for AEO, Healthcare Financial Advisors, LLC (HC Financial), and Charlotte Baskins, the administrator of the nursing home, Willowbend at Marion, Arkansas. We affirm the summary judgments for HC Financial and Baskins, and reverse the summary judgment for AEO.

AEO is a not-for-profit, tax-exempt corporation that is the license holder and operator of several nursing homes in Arkansas, including Willowbend, in which Mr. Mason allegedly suffered personal injuries while he was a resident. Appellant offered evidence that a group of investors, including Southern Key Investments, which had owned nursing homes in Arkansas, created AEO in 2002 as a charitable organization to stay in business without having to buy liability insurance. HC Financial, which was created in 2003, provided financial, accounting, and information-technology services to AEO. Healthcare Staffing Associates, Inc. (HC Staffing), was created in 2003 to employ the direct-care staff at the nursing homes. In 2005, some of the investors purchased the Johnson–Hobson Care Home, Inc., changed its name to Willowbend, and leased the facility to AEO.

Appellant filed this action in 2007 against AEO, Marion Healthcare Arkansas, LLC (AEO's landlord at Willowbend), Charlotte Baskins, and Johnson–Hobson Care Home.[1] The alleged negligence, medical malpractice, felony neglect, premises liability, res ipsa loquitur, breach of in-

---

1. The claims against Johnson–Hobson Care Home were dismissed with prejudice.

formed consent, breach of fiduciary duty, breach of contract, deceptive trade practices, wrongful death, and violations of the Arkansas Long–Term Care Residents' Rights Act. AEO moved for summary judgment on the basis of charitable immunity. Appellant responded that the charitable-immunity doctrine should be abolished and that genuine issues of material fact remained as to whether AEO was entitled to that defense. The circuit court ruled that it could not overrule the charitable-immunity doctrine and granted summary judgment to AEO:

> Arkansas Elder Outreach of Little Rock, Inc., like Jefferson Hospital in the *George* case, has met at least three (3) of the factors. However, in the present case Arkansas Elder Outreach of Little Rock, Inc. has satisfied all but one of these factors and that is this Defendant is not dependent on donations and contributions for its existence, Arkansas Elder Outreach of Little Rock, Inc.'s earnings are used to pay reasonable compensation for services rendered to the entity and to make payments in furtherance of its charitable purposes. Any "profit" or surplus is used for charitable purposes such as improving the facilities and services and to maintain the ability to provide services to those unable to pay. As in the *George* case, the lack of reliance on contributions and donations does not negate the Defendant's entitlement to charitable immunity.

Appellant filed a motion for ex parte communication with current and former employees of the corporate defendants, to which AEO objected. The trial court entered an order providing that appellant and her counsel were precluded from mailing ex parte contact with any current employees, and from discussing any matter that was subject to the attorney-client privilege with former employees.

Charlotte Baskins moved for summary judgment on the grounds that she was immune from liability as a member of the board of directors of a nonprofit corporation, that 42 C.F.R. § 483.75, which appellant had alleged she had violated, did not create a private cause of action or set forth a standard of care, and that appellant could not assert a claim against her under the Residents Rights statute. Appellant responded that she was suing Baskins only in her capacity as Willowbend's administrator. The circuit court granted summary judgment to Baskins, ruling that the direct care of residents was not within the scope of Baskins's employment, that appellant made no allegation of any specific or direct action that Baskins had taken against Mr. Mason, that AEO's immunity inured to Baskins's benefit for actions taken in the scope of her position as a member of its board of directors, and that 42 C.F.R. § 483.75 did not provide for a private right of action against Baskins.

Appellant filed an amended and substituted complaint adding HC Staffing and HC Financial as defendants. HC Financial filed a motion for summary judgment, along with the affidavit and deposition of Doug Walsh (a director of AEO, an employee of HC Financial, and a part owner of Southern Key). Appellant argued in response that there was a genuine issue of material fact as to whether HC Financial was responsible for ensuring that the care and services set forth in the admission agreement were provided to Mr. Mason and filed an excerpt from the deposition of Chris McMorris (president of HC Staffing and a part owner of that company and HC Financial). The circuit court granted summary judgment to HC Financial, finding no evidence that it had provided any direct care to Mr. Mason or that its actions had proximately caused him any harm, and

that it was not subject to suit under the Residents Rights statute. On August 19, 2011, the circuit court entered a final order dismissing any remaining claims. Appellant then pursued this appeal.

Summary judgment may be granted by a trial court only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, clearly show that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Watkins v. Ark. Elder Outreach of Little Rock, Inc.,* 2012 Ark. App. 301, 420 S.W.3d 477. When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact. *Id.* On appeal, we need only decide if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* In making this decision, we view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary judgment is improper when there are genuine issues of material fact as to a party's intent. *Id.* Summary judgment should be denied if reasonable minds might reach different conclusions from the undisputed facts. *Id.*

Appellant argues that the Residents' Rights statute abrogated the charitable-immunity doctrine on claims brought against nursing homes under that act. We need not decide this issue because, as explained below, AEO did not prove its entitlement to charitable immunity as a matter of law. *See Downing v. Lawrence Hall Nursing Ctr.,* 2010 Ark. 175, at 12 n. 5, 369 S.W.3d 8, 15 n. 5.[2]

Appellant asserts that the trial court erred in granting summary judgment to Baskins because, as administrator of the nursing home, she was not required to provide direct care to Mr. Mason in order to owe him a duty. She also argues that certain federal and state regulations and statutes imposed a duty of care upon Baskins to ensure that Mr. Mason received proper care. The essential elements of a cause of action for negligence are that the plaintiff show a duty owed and a duty breached, and that the defendant's negligence was a proximate cause of the plaintiff's damages. *Watkins, supra.* Proximate cause is defined, for negligence purposes, as that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. *Id.* There is no question that an individual employed by a corporation, or officers and directors of corporations, may be personally liable to the extent that their tortious acts resulted in harm to a third party, if they were personally involved in the events surrounding an injury, they may be sued. *Bayird v. Floyd,* 2009 Ark. 455, 344 S.W.3d 80; *Watkins, supra.* We need not, however, decide what duty of care Baskins owed him because, even if appellant established a duty, she did not establish how Baskins breached any duty to him or that a breach proximately caused him any injury.

Appellant further challenges the summary judgment granted to HC Financial. She did not, however, establish facts from

---

**2.** Appellant also argues that, even if AEO otherwise established its entitlement to the charitable-immunity defense, the time has come to abolish the doctrine in Arkansas. As we explained n *Watkins,* the supreme court has refused to abolish the doctrine, and we must follow its precedent.

which one could conclude that HC Financial had a duty to Mr. Mason or that its actions proximately caused his injuries.

Appellant also asks us to reverse the trial court's order concerning ex parte communication with current and former employees of the corporate defendants, as set forth in Arkansas Rule of Professional Conduct 4.2 (2012), which no longer prohibits communications with a person whose statement may constitute an admission. As we explained in *Watkins,* the trial court has wide discretion in matters pertaining to discovery and we will not reverse its decision in such matters absent an abuse of discretion. Rule 4.2 provides,

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law.

Comment 7 to the rule states that, in the case of a represented organization, the rule prohibits communications with a constituent of the organization who has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Appellant alleged in her complaint that appellees "had vicarious liability for the acts and omissions of all persons or entities under their control. . . ." We hold that, in light of appellant's broad allegations of vicarious liability, the trial court did not abuse its discretion in making this ruling.

◼ Appellant also argues that AEO failed to establish its status as a genuine charitable organization as a matter of law. 1 he issue of whether a party is immune from suit is purely a question of law, and is reviewed de novo. *Gentry v. Robinson,* 2009 Ark. 634, 361 S.W.3d 788. The es-

sence of the charitable-immunity doctrine is that agencies, trusts, etc., created and maintained exclusively for charity, may not have their assets diminished by execution in favor of one injured by acts of persons charged with duties under the agency or trust. *Downing, supra, Anglin v. Johnson Reg'l Med. Ctr.,* 375 Ark. 10, 289 S.W.3d 28 (2008); *George v. Jefferson Hosp. Ass'n,* 337 Ark. 206, 987 S.W.2d 710 (1999); *Watkins, supra.* Because the doctrine favors charities and results in a limitation of potentially responsible persons whom an injured party may sue, we give the doctrine a very narrow construction. *Id.* The burden of pleading and proving an affirmative defense, such as charitable immunity, is on the party asserting it. *Id.*

◼ An entity's status as a nonprofit organization is but one of eight factors to be considered in determining whether it is entitled to charitable immunity. To determine whether an organization is entitled to charitable immunity, courts consider the following factors.

(1) whether the organization's charter limits it to charitable or eleemosynary purposes, (2) whether the organization's charter contains a "not-for-profit" limitation, (3) whether the organization's goal is to break even, (4) whether the organization earned a profit, (5) whether any profit or surplus must be used for charitable or eleemosynary purposes, (6) whether the organization depends on contributions and donations for its existence, (7) whether the organization provides its services free of charge to those unable to pay, and (8) whether the directors and officers receive compensation.

*Watkins,* 2012 Ark. App. 301, at 9, 420 S.W.3d at 483. These factors are illustrative, not exhaustive, and no single factor is dispositive of charitable status. *Id.,* 420 S.W.3d at 483.

Summary judgment is appropriate where reasonable persons would not reach different conclusions based upon undisputed facts. *George*, 337 Ark. at 212–13, 987 S.W.2d at 713. In cases such as this, however, it is appropriate for the jury to determine whether an entity is a genuine charitable organization. *See Crossett Health Ctr. v. Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953). In *Watkins*, we held that reasonable, fair-minded persons could reach different conclusions based upon the undisputed facts, and reversed the circuit court's award of summary judgment to AEO, explaining,

There is no dispute that AEO's articles of incorporation included the necessary statutory language for a nonprofit and charitable entity and, as admitted by Walsh, it does not depend on contributions or donations for its existence, most of its revenue comes from Medicare and Medicaid programs, with the balance from third-party payors and private patients. Although appellant argues that AEO's purported "free care" is simply "bad debt" and that very little, if any, care is given free of charge to indigents, this factor is not particularly important in light of the fact that Medicare and Medicaid play such significant roles in funding nursing-home care. *See Jackson v. Sparks Reg'l Med. Ctr.*, 375 Ark. 533, 294 S.W.3d 1 (2009). Additionally, the directors of AEO receive only $500 for attending each board meeting. *See id.*

In this case, the third, fourth, and fifth factors are clearly the most relevant. Appellant contends that AEO's goal was not to break even but to make a healthy profit, which was not used for charitable purposes, and offered evidence of AEO's net income and retained earnings during the relevant time period. It is true that the existence of profits and retained surplus are not necessarily determinative of charitable status, *see Anglin, supra: George, supra*, however, what *is* significant is AEO's payments to HC Staffing, HC Financial, and especially the owners of the leased facilities, which AEO characterizes as nothing but the reasonable expenses of doing business. Appellant asserts that the earnings are actually being siphoned off, in the guise of expenses, to ₉make it appear as if AEO has much less of a profit than it actually does, and that a question of fact remains to be tried as to whether AEO was created, not as a genuine charitable entity, but as one designed to keep substantial profits flowing to the investors without purchasing liability insurance. Her argument includes the principles underlying the "piercing-the-corporate-veil" doctrine, which provides that, in special circumstances, a court will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party. *K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 280 S.W.3d 1 (2008).[3] The issue of whether the corporate entity has been abused is a question for the trier of fact. *Id.* AEO responds that it entered into leases with the owners of the facilities in arms-length transactions, with monthly lease payments commensurate with market rates, and that appellant offered no evidence that those payments or its other expenses were unreasonable, exorbitant, or above market rate.

---

3. *See also Advocat, Inc. v. Sauer*, 353 Ark. 29, 51–52, 111 S.W.3d 346, 358–59 (2003), *cert. denied*, 540 U.S. 1012, 124 S.Ct. 532, 157 L.Ed.2d 424(2003), where there was clear testimony by Advocat's former chief financial officer that a parent corporation and two subsidiaries were operated as one business.

In resolving this issue, however, it is important to keep in mind that AEO, not appellant, bore the burden of establishing its right to summary judgment, that the charitable-immunity doctrine is to be narrowly construed, and that the pivotal issue in this case is whether the charitable-entity form has been abused. AEO convinced the trial court that, as a matter of law, its monthly expenses were reasonable and that the corporate entities and expenses were not intentionally structured as a way to funnel profits to the investors without buying liability insurance. Thus, in deciding this issue on appeal from a summary judgment, we must determine if there is a question of fact as to whether these expenses were reasonable, however, it has long been held that whether something is reasonable is a question of fact. *See Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998); *Crum v. Craig*, 2010 Ark. App. 531, 379 S.W.3d 71; *Mountain Pure, L.L.C. v. Affiliated Foods Sw., Inc.*, 96 Ark.App. 346, 241 S.W.3d 774 (2006). Additionally, whether the charitable form has been abused is a question of fact, *see K.C. Props., supra*, and summary judgment is improper when there are genuine issues of material fact as to a party's intent. *Mercy Health Sys. [of Nw. Ark., Inc. v. Bicak], supra* [2011 Ark. App. 341, 383 S.W.3d 869].

We hold that genuine issues of material fact remain to be tried as to whether AEO is, in fact, a nonprofit, charitable organization. Technically, its originators took the necessary steps to create one on paper. The proof offered by appellant, however, revealed that the primary impetus for AEO's creation was to enable the nursing homes to continue to operate profitably without purchasing liability insurance, that the creation of AEO did not change the actual operation of the nursing homes, and that, whether the money generated by the nursing homes is labeled "reasonable expenses" or "profits," it continued to flow in the same direction as it did before.... We offer no opinion as to whether AEO is a genuine charitable organization or merely a device for maximizing profits for the investors by evading the need to purchase liability insurance, that question is for the trier of fact to determine. Accordingly, we reverse and remand the summary judgment as to AEO.

2012 Ark. App. 301, at 10–13, 420 S.W.3d at 484–85.

The evidence revealed that various limited partnerships led by David McCollister, including Southern Key, owned and operated several nursing homes in Arkansas. In 2002, it became extremely expensive to obtain liability insurance in Arkansas, and McCollister considered selling the nursing homes. As Walsh explained in his depositions, he helped develop a plan for the nursing homes to remain in business without having to purchase liability insurance. AEO was formed as a nonprofit entity to lease the facilities that the limited partnerships owned and to operate the nursing homes. HC Staffing and HC Financial were created in 2003 and share the same address in Baton Rouge, Louisiana. HC Staffing was formed to provide the direct caregivers at the nursing homes, although it prepares the paperwork, the administrator and the director of nursing at each nursing home supervise the direct-care staff. HC financial provides accounting and information technology to AEO. Walsh is a part owner of Southern Key, which owns interests in the limited partnerships that own the facilities, he negotiates the lease agreements on behalf of AEO; and he has been an employee of HC Financial.

■ AEO's payments to HC Staffing, HC Financial, and the owners of the facilities raise questions. Appellant asserts that AEO's earnings are labeled as expenses to hide profits, while AEO responds that it entered into the leases with the owners of the facilities in arms-length transactions, with monthly payments in line with market rates, that all the services provided by HC Financial and HCS Staffing fill legitimate needs of the nursing homes, and that appellant failed to establish that those charges are unreasonable. As we explained in *Watkins*, what is reasonable is usually a question of fact, and it was AEO's burden to establish its entitlement to charitable-immunity status. Considering the circumstances surrounding the creation of AEO, HC Financial, and HC Staffing, and their relationships with each other, Southern Key, and the limited partnerships, an issue of material fact exists as to whether AEO is a genuine charitable entity. Accordingly, we reverse the circuit courts award of summary judgment to AEO.

Reversed and remanded in part, affirmed in part.

VAUGHT, C.J., and GLOVER, J., agree.