

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-12-663

| | |
|---|---|
| | **Opinion Delivered** December 4, 2013 |
| GAIL PARKERSON<br>APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CV2007-499 III] |
| V. | |
| JANET BROWN, HARLAN & MARY HANKINS, THOMAS & BLANCHE CHOATE, MARK WILCOX, ARKANSAS LAND COMMISSIONER, BRENDA SHORT, GARLAND COUNTY ASSESSOR, REBECCA DODD-TALBERT, GARLAND COUNTY TAX COLLECTOR, and RON LEWSADER CONSTRUCTION, LLC | HONORABLE JOHN LINEBERGER, JUDGE |
| APPELLEES | AFFIRMED |

## WAYMOND M. BROWN, Judge

Gail Parkerson, pro se, appeals from the Garland County Circuit Court's ruling that she failed to establish adverse possession or a boundary by acquiescence of a small tract of land adjacent to Lake Hamilton, and that she had abandoned an earlier-acquired prescriptive easement over that property for the purpose of ingress and egress to the lake. This court remanded for rebriefing because of multiple deficiencies in the abstract and argument in the

SLIP OPINION

statement of the case on May 1, 2013.[1] Appellant has adequately corrected those deficiencies

and now we address the merits of this case.

This case has been before this court before.[2] There we set forth the lengthy history

of litigation among the parties:

> Gail Parkerson appeals from an order denying her motion to intervene in a title confirmation action filed by appellee Janet Brown. Brown petitioned the circuit court to confirm title to land she bought at a tax sale, but she did not join Parkerson, who had an easement over the property, or appellees Thomas and Blanche Choate, who owned part of the property. The Choates eventually intervened in the action and executed a consent judgment with Brown that divided the land between them. Parkerson discovered the consent judgment and moved to intervene, but the circuit court denied her motion, leading to this appeal. We reverse and remand with directions to allow Parkerson's intervention.

> Parkerson owns a lot in Hot Springs that has been in her family since the 1950s. The lot is bordered on the east by Bayshore Drive and on the west by Lake Hamilton. Parkerson's neighbors to the southwest are the Choates. Between the two lots is a triangular tract of land whose owner has not been identified. In 1990, Parkerson filed suit in Garland County Chancery Court claiming adverse possession of the tract. In a 1992 order, the chancellor denied Parkerson's claim but ruled that she and three other persons had an easement over the majority of the property. The chancellor directed the Garland County tax assessor to determine who owned and used the easement and to prorate the taxes accordingly. The chancellor also quieted title in a portion of the property to the Choates' predecessors, Samuel and Phyllis Fullerton. The portion was described as the "real property evidenced by a line in a southwesterly direction from the metal pin on the road to the end of the rock sea wall." The court's order stated that the exact description of the Fullerton property and the disputed easement would be established by a future survey. The record does not indicate that the survey ever took place.

> The county assessor attempted to follow the court's order by listing Parkerson and others as the owners of an easement, described on some records as Parcel 4688. According to Parkerson, she duly paid her taxes on the parcel. In 1997, the Choates bought the Fullerton property and commissioned a survey, which reflected their

---

[1]*Parkerson v. Brown*, 2013 Ark. App. 297.

[2]*Parkerson v. Brown*, 2010 Ark. App. 505, 379 S.W.3d 485.



ownership of a strip of land along their eastern border that was "obtained in Chancery Court No. 90-453-J." The survey made no findings regarding the easement.

At some point thereafter, the county assessor forfeited Parcel 4688 to the State Land Commissioner for nonpayment of taxes. The assessor's office would later acknowledge that Parkerson's name was erroneously omitted from its tax records in 2001. In 2004, Janet Brown bought Parcel 4688 at a tax sale for $5000, plus $101.31 in unpaid taxes. Nothing in the record indicates that Parkerson was afforded notice of the tax delinquency or the tax sale. On May 8, 2007, Brown filed a petition to confirm title to the property in herself. Despite having a deed from the Land Commissioner that contained only a brief identification of the property, Brown's petition set forth a complete metes-and-bounds description that matched the description of the tract at issue in the 1990 chancery case—the property over which Parkerson obtained an easement and the Choates obtained partial ownership (through their predecessors, the Fullertons). Brown named Harlan and Mary Hankins, who were listed in the tax records on Parcel 4688, as defendants, but she did not name Parkerson or the Choates. She did, however, publish notice of her petition in the newspaper once a week for four weeks as required by law.[3]

The Hankinses did not respond to Brown's petition, and the circuit court entered an order confirming title in Brown, using the metes-and-bounds description in Brown's petition. Rather quickly, the Choates discovered Brown's claim of ownership and moved to intervene. The circuit court allowed the intervention and set aside the title-confirmation order. On May 22, 2008, Brown and the Choates entered into a consent judgment that essentially vested the Choates with title to the land obtained by the Fullertons in the 1992 chancery order and vested Brown with title to the remainder of the tract. Parkerson learned of the situation two months later and moved to intervene, claiming an interest in the property by virtue of her easement and adverse possession both before and after the 1992 decree. Parkerson asserted that the failure to notify her of the tax-delinquency and title-confirmation proceedings deprived her of due process; that Brown's deed from the Land Commissioner lacked a valid description; and that Brown made misrepresentations to the court in order to obtain title to the parcel. She also submitted an affidavit stating that she was the only person who had used and maintained the subject property following the 1992 order and that she had contacted the assessor yearly since that time to ascertain her tax

---

[3] *Parkerson v. Brown*, 2010 Ark. App. 505, at 2, 379 S.W.3d 485, 487 (citing Ark. Code Ann. § 18-60-603(a)(2) (Supp. 2009)).

obligation and pay it in full. The circuit court denied Parkerson's motion to intervene, and this appeal followed.[4][5]

This court then held that appellant was entitled to intervene and remanded for trial.

After all of the circuit judges in that district recused, the Administrative Office of the Courts appointed Judge John Lineberger to try the case. After a trial on February 7–8, 2012, the circuit court issued an opinion on March 22, 2012, ruling that appellant had abandoned the easement awarded in the 1992 order; that she had failed to establish adverse possession; and that she had failed to establish a boundary by acquiescence. The court denied appellant's petition to confirm title to the easement area; directed the county's tax collector and assessor to recognize appellees Thomas and Blanche Choate as the owners of the property described in the December 18, 1997 exchange warranty deed and the May 22, 2008 consent judgment, and to recognize Ron Lewsader Construction, LLC, (which had also asserted an interest) as the sole owner of the property described in a deed dated June 13, 2008.

Appellant filed an objection and motion to amend on March 30, 2012. The court entered an order on April 11, 2012, amending the decree and dismissing Lewsader's claim against appellant for damages and denying appellant's motion in all other respects. Appellant filed a notice of appeal on May 10, 2012, from the March 22 and April 11, 2012 orders, "as well as all of this Court's Orders and rulings in this entire case . . . including . . . her Motions for Summary Judgment." On July 26, 2012, appellant filed a motion for reconsideration under

---

[4]The denial of a motion to intervene is an appealable order. *Parkerson*, 2010 Ark. App. 505, at 2, 379 S.W.3d 485, 487 (citing *Nw. Ark. Area Agency on Aging v. Golmon*, 70 Ark. App. 136, 15 S.W.3d 363 (2000)).

[5]*Parkerson*, 2010 Ark. App. 505, at 1–4; 379 S.W.3d 485–87.

SLIP OPINION

SLIP OPINION

Arkansas Rule of Civil Procedure 60 and requested a certification under Arkansas Rule of Civil Procedure 54(b). On August 1, 2012, the circuit court entered on order dismissing any outstanding claims with prejudice. Appellant filed an amended notice of appeal on August 3, 2012, including the August 1, 2012 order.

## I. *Discovery*

In her first argument on appeal, appellant contends that the trial court erred in denying her discovery requests and refusing to grant a continuance until that discovery was provided. She argues that the trial court should have granted her request for discovery concerning the Choates' relocated boathouse; the man that Lewsader hired to cut down some trees; and "Brown's past similar problem of fraud, and other facts Parkerson has yet to be able to make anything of, even were, in discovery."

The Choates respond that none of appellant's motions to compel before trial concerned their responses to discovery. This is true. The Commissioner of State Lands also responds that appellant did not argue below or on appeal that his discovery responses were deficient. We agree. Our appellate courts will not consider arguments raised for the first time on appeal.[6]

In any event, appellant was permitted to question Mr. Choate at trial about the location of his boathouse and did not raise the issue of discovery about it until after trial. Similarly, appellant testified about and questioned Lewsader about the person he had hired to cut down trees. The trial court has wide discretion in matters pertaining to discovery and

---

[6]*Burns v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 521, __ S.W.3d __.

SLIP OPINION

this court will not reverse its decision in such matters absent an abuse of discretion.[7] Appellant has failed to demonstrate how any information about the boathouse, or any other additional information, would have supported her claims and changed the outcome of the case. We find that the circuit court did not abuse its discretion; we affirm on this point.

## II. *Summary Judgment*

In her second point, appellant argues that the trial court erred in denying her motion for summary judgment against the Arkansas Commissioner of State Lands, the Garland County tax collector and assessor, Brown, and Lewsader. A denial of a motion for summary judgment is not subject to review on appeal, even after a trial on the merits.[8] The rationale for this rule is that a final judgment should be tested upon the record as it exists at the time it is rendered, rather than at the time the motion for summary judgment is denied, because further evidence may be supplied at trial.[9]

## III. *Evidentiary Rulings and Recusal*

In her third point, appellant argues that the trial court abused its discretion in refusing to admit evidence about the 1990 quiet-title action (such as the property description and the counterclaim filed by the Fullertons, to impeach Mr. Choate); Burgie Sutton's deed (regarding notice of the tax sale); testimony from Mr. Choate about grounds for the default

---

[7]*Carnell v. Ark. Elder Outreach of Little Rock, Inc.*, 2012 Ark. App. 698, __ S.W.3d __.

[8]*Rick's Pro Dive 'N Ski Shop, Inc. v. Jennings-Lemon*, 304 Ark. 671, 803 S.W.2d 934 (1991).

[9]*Id.*

SLIP OPINION

judgment, the limited warranty deed to Brown, the Choates' lake frontage, and the 2006 property-assessment cards; and a larger survey map.

On appeal, this court will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion nor will it reverse absent a showing of prejudice.[10] Both the Choates and the Commissioner point out that appellant did not proffer pleadings from the 1990 lawsuit, or any other exhibits, as required by Arkansas Rule of Evidence 103(a)(2).[11] The failure to proffer evidence so that the appellate court can see if prejudice resulted from its exclusion precludes review of the evidence on appeal.[12] In any event, as they point out, the Choates did not purchase the property until 1997; Mr. Fullerton did not attempt to alter or change the conclusion reached in the 1992 order; and Mr. Fullerton testified that he had always maintained his property to the boundary line determined by that order. Therefore, there was no violation of the 1992 order.

We agree with the Commissioner's argument that the document appellant argues should have been admitted for impeachment purposes–the counterclaim filed by the Fullertons–did not constitute a statement by Mr. Choate, and therefore, could not be used to impeach his testimony.[13] Appellant goes on to argue that the circuit court erred in refusing to permit her to question Mr. Choate about the limited warranty deed issued to Ms. Brown

---

[10] *Tadlock v. Moncus*, 2013 Ark. App. 363, __ S.W.3d __.

[11] (2013).

[12] *Carr v. Gen. Motors Corp.*, 322 Ark. 664, 911 S.W.2d 575 (1995).

[13] *See* Ark. R. Evid. 613(b) (2013).

by the Commissioner. The Choates respond stating, correctly, that validity of the limited warranty deed issued to Janet Brown was not relevant to appellant's adverse-possession claim as their title is based upon the 1992 order and the exchange warranty deed that they received from the Fullertons. Where the trial court admitted Spurlin's and Spainhour's surveys into evidence, appellant argues that the circuit court erred in excluding an alternate version of the survey with different notes; however, appellant made no showing of how the larger map would have added to her case. We cannot find that the circuit court abused its discretion in any of the above evidentiary rulings.

Finally, with no examples other than the trial court's rulings against her, appellant also argues that the court was biased against her and should have recused. There is a presumption of impartiality with respect to judges.[14] The party seeking recusal must demonstrate bias.[15] Unless there is an objective showing of bias, there must be a communication of bias in order to require recusal for implied bias, and the mere fact that a judge has ruled against a party is not sufficient to demonstrate bias.[16] A judge's decision not to recuse will not be reversed in the absence of an abuse of discretion.[17] Because appellant cites no evidence even tending to show an impartiality on the court's part, we hold that the judge's decision not to recuse was not an abuse of discretion.

---

[14] *City of Rockport v. City of Malvern*, 2010 Ark. 449, 374 S.W.3d 660.

[15] *Id.*

[16] *Id.*

[17] *Id.*

SLIP OPINION



IV. *Adverse Possession, Abandonment of the Easement, and Boundary by Acquiescence*

In her fourth point on appeal, which is extremely difficult to follow, appellant challenges all of the trial court's findings of fact and conclusions of law in the March 22, 2012 order. Although she specifically disputes the court's findings in paragraph 3 and 4 of the March 22, 2012 order, which concerned the Choates's and Lewsader's titles, they are not relevant to the issues on appeal. Appellant's arguments primarily concern paragraphs 9–20. She challenges the court's ruling that she failed to establish adverse possession of any portion of the Choates' property; that she abandoned her easement; that she was not entitled to notice of the tax sale; that, because a portion of the property had been vested in the State, no adverse possession could occur during the time that the State held the title; and that she failed to establish a boundary line by acquiescence.

## A. Adverse Possession

This court reviews adverse possession and quiet title actions de novo on the record, and will not reverse a finding of fact by the trial court unless it is clearly erroneous.[18] In reviewing a trial court's findings of fact, this court gives due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony.[19]

The circuit court made the following findings about adverse possession and abandonment of the easement:

---

[18] *Strother v. Mitchell*, 2011 Ark. App. 224, 382 S.W.3d 741.

[19]*Id.*



11. The Fullertons' [sic] are the predecessors in interest to the Choates. After none of the parties hired Steve Hankins to survey the described lands, the Choates engaged Wade Spainhour to perform a survey pursuant to the August 19, 1992 Court Order. In his survey, Spainhour established the East Line for the (then) Fullerton property as extending from a "Found 3/4" Rod on the North right-of-way of Bayshore Drive to a "Found ½" Re-bar at End of Rock Wall". The Rock sea wall reference by Spainhour was the same rock seawall that had been in place at the same location in 1990-1992.

12. The east boundary line for the Fullerton property established by Spainhour matched the established yard line that had been maintained by the Fullertons. In 1997, the adjacent property (remaining "easement area") was described by Spainhour and Baker Fullerton as being unkept and overgrown.

13. Parkerson testified that she never used the prescriptive easement described in the 1992 Order for ingress or egress to Lake Hamilton. Her deeded property has substantial lake frontage thus she had no need for such an easement. She also denounced the 1992 Order as being wrong in substance although at one point she said it was a valid Order. She testified that she paid all the ad valorem taxes due; however, she offered no tax receipts or other creditable evidence reflecting that she paid any ad valorem taxes on the "easement area". And, as will be discussed later, the "easement area" was forfeited to the State of Arkansas during the relevant time period for the non-payment of such taxes.

14. A prescriptive easement is considered abandoned after seven (7) years of non-use. *Owners Ass'n of Foxcroft Woods, Inc. v. Foxglen Assocs.*, 346 Ark. 354, 57 S.W.3d 187 (2001). The evidence reflects, and the Court finds that Parkerson abandoned the easement granted in the 1992 Order. It is also noteworthy that the lands over which Parkerson was granted an easement does not have lake frontage.

15. Parkerson claims to have gained ownership of the "easement area" under the laws of adverse possession by mowing the land on occasions. Her close friend, Morris Cash testified that he was aware of her mowing the land and that he had arranged for others to mow the area. Under cross examination he acknowledged, however that the "easement area" was not conducive to a lawn mower. And, other than Cash, not one single person from the neighborhood or surrounding area was called as a witness to support Parkerson's claim of ownership.

16. The court finds that Parkerson's mowing was sporadic and was not sufficient to reflect possession by her that was "actual, open, notorious, continuous, hostile, exclusive and accompanied by intent to hold against the true owner".

SLIP OPINION

17. Parkerson's claim to have been paying ad valorem taxes on the "easement area" is not supported by the evidence. She offered no paid tax receipts, cancelled checks, or any other proof of tax payments other than those due on the lands to which she holds record title.

18. The evidence reflects that no one paid the ad valorem taxes due on the "easement area" for a period of time. In 2003, the Garland County Tax Collector certified the parcel as No. 04688 to the Arkansas State Land Commissioner due to the non-payment of taxes. On May 12, 2004, the Arkansas State Land Commissioner conveyed the parcel by Limited Warranty Deed to Janet Brown, Lewsader's predecessor in interest. Parkerson alleges that she should have received notice of the tax sale from the Arkansas State Land Commissioner but since she held no recordable interest in the land, notice to her was not necessary. Ark. Code Ann. Sec. 26-37-302(c). *See also*, *Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

19. Parkerson' [sic] claim of adverse possession fails for another reason. Following certification by the Garland County Tax Collector in 2003, title to the lands vested in the State of Arkansas. Ark. Code Ann., Sec. 26-37-101(c). No one can legally claim property adversely to the interest of the State of Arkansas. *Nichols v. Council*, 51 Ark. 26, 9 S.W. 305 (1888). The State did not convey its interest in the land until May 12, 2004. Parkerson pursued the instant claim in June, 2008, which means she could not have held the property adversely for seven years.

Adverse possession is governed by both common and statutory law. To prove the common-law elements of adverse possession, a claimant must show that he has been in possession of the property continuously for more than seven years and that his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner.[20] It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another.[21] Whether possession is adverse to the true owner is a

---

[20]*Horton v. Taylor*, 2012 Ark. App. 469, __ S.W.3d __.

[21]*Id.*

question of fact.[22] In 1995, the General Assembly added, as a requirement for proof of adverse possession, that the claimant prove color of title and payment of taxes on the subject property or contiguous property for seven years.[23] However, if the claimant's rights to the disputed property vested before 1995, he need not comply with the 1995 statutory change.[24]

The 1992 order quieted title to the Fullertons in property "evidenced by a line in a southwesterly direction from the metal pin on the road to the end of the rock sea wall." Spainhour initially placed this pin (a 3/4" steel rod) as part of a 1981 survey. The Fullertons maintained the yard, which extended to the straight line from the metal rod to the end of the rock sea wall, before and after the 1992 order. Appellant and her witness admitted that the property she claimed to the east of the Fullertons's yard and the Fullertons's yard were separated by a clear line of demarcation. Appellant never maintained any part of the property west of the line from the metal pin to the rock sea wall when it was owned by the Fullertons. The Fullertons sold their property to the Choates in 1997, and Spainhour surveyed it; he described the property as it had been generally identified in the 1992 order. This description matched the yard maintained by the Fullertons. The Choates continued to maintain the yard in the same location. Samuel Fullerton's and Mr. Choate's testimony supported the trial court's finding that appellant's mowing of the unmaintained, "grown up, unkept" area was sporadic (at most, twice a year with a bush hog) and not sufficient to support possession.

---

[22] *Id.*

[23] *See* Ark. Code Ann. § 18-11-106 (Supp. 2011).

[24] *Horton*, *supra.*

12

SLIP OPINION

Appellant admitted that the property outside the Choates' yard had been allowed to remain "like woods." We affirm the trial court's finding as to adverse possession.

We do not base our decision on appellant's lack of payment of taxes. Although appellant did not proffer any documentary evidence that she had paid taxes on the easement area, the parties stipulated that appellant had paid taxes on the property to which she had record title. This stipulation satisfies the statute's requirement of paying taxes on contiguous property for seven years.

Furthermore, whether appellant was entitled to notice of the tax sale makes no difference in our decision.[25] In our previous decision, this court held that the assessor's office had erroneously deleted appellant from its tax rolls in 2001; that she should have been notified of the 2004 tax sale and 2007 title-confirmation action; and that she should have been allowed to intervene in the title-confirmation action. Nevertheless, she has since been given the opportunity to present her case and has failed to establish the common-law elements of adverse possession.

### B. Abandonment

Once gained, a prescriptive easement may be abandoned by more than seven years of nonuse.[26] Appellant testified that she had never needed the 1992 prescriptive easement

---

[25] *See* Ark. Code Ann. § 26-37-301 (Repl. 2012).

[26] *Owners Ass'n of Foxcroft Woods, Inc. v. Foxglen Assocs.*, 346 Ark. 354, 57 S.W.3d 187 (2001).

(which had been primarily for access to the lake) because her property has lake frontage. The court's finding that appellant had abandoned the easement is not clearly erroneous.

## C. Acquiescence

The circuit court made the following findings about appellant's claim of acquiescence:

> In the case at bar, Parkerson says that her adjoining neighbors acquiesced in her belief that the southwestern boundary of the "easement property" was the true boundary line between their respective properties. She offered no evidence by any of the present owners of the adjoining property or any of their predecessors to support such an allegation. In fact, the present owners and one predecessor vigorously denied any sort of acquiescence. In addition, the only substantial evidence of a visible dividing line between the Parkerson and Choates' properties was an area of unkept and overgrown foliage. Her argument fails.

Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and apparently consent to that line, it becomes a boundary by acquiescence.[27] A boundary line by acquiescence may be inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line.[28] This is a question of fact, which this court will not reverse unless it is clearly erroneous.[29] Samuel Fullerton testified that he had never agreed to share any property with appellant and that he had always maintained his yard to the line formed by the metal pin and rock sea wall. Mr. Choate testified that he had always maintained to the same line. The trial court's finding on this issue was not clearly erroneous.

---

[27] *Reynolds v. GFM, LLC*, 2013 Ark. App. 484, __ S.W.3d __.

[28] *Id.*

[29] *Strother, supra.*



V. *Quiet title*

In her fifth point, appellant argues that the trial court erred in refusing to grant her petition for quiet title. This point is necessarily affirmed by disposition of the first four points.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree

*Gail Parkerson*, pro se appellant.

*Friday, Eldredge & Clark, LLP*, by: *Bruce B. Tidwell*, for appellees Thomas and Blanche Choate; *Carol L. Lincoln* and *Diane E. Holitik*, Commissioner of State Lands for appellee John Thurston; and *Satterfield Law Firm PLC*, by: *Guy "Randy" Satterfield*, for appellee Ron Lewsader Construction, LLC.