

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV–13–60

|  |  |
|---|---|
| ARKANSAS ELDER OUTREACH OF LITTLE ROCK, INC.<br><br>APPELLANT<br><br>V.<br><br>JOE ANN NICHOLSON<br><br>APPELLEE | **Opinion Delivered** December 18, 2013<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT<br>[NO. CV–2009–537]<br><br>HONORABLE SANDY HUCKABEE, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

For a fourth time before this court, Arkansas Elder Outreach of Little Rock, Inc. (AEO), argues that it is entitled to summary judgment on its defense of charitable immunity. In three previous opinions, we ruled that summary judgment was inappropriate because fact questions remained as to whether AEO was a genuine non-profit charity. *Carnell v. Ark. Elder Outreach of Little Rock, Inc.*, 2012 Ark. App. 698, ___ S.W.3d ___; *Ark. Elder Outreach of Little Rock, Inc. v. Thompson*, 2012 Ark. App. 681, ___ S.W.3d ___; *Watkins v. Ark. Elder Outreach of Little Rock, Inc.*, 2012 Ark. App. 301, ___ S.W.3d ___. In the present case, AEO sought summary judgment from the Lonoke County Circuit Court, again claiming charitable immunity as a matter of law. The court denied summary judgment. We affirm.

The events surrounding AEO's claim of immunity are well documented in the three earlier opinions. Briefly, a group called Southern Key Investments managed several nursing homes in Arkansas as for-profit enterprises. The homes were owned by limited partnerships

in which Southern Key or related entities served as general partners. In 2002, the price of liability insurance for nursing homes in Arkansas increased greatly, and Southern Key's facilities faced the prospect of closure. After consulting accountants and attorneys, Southern Key's part owner/employee, Doug Walsh, learned that Arkansas recognizes the doctrine of charitable immunity whereby a charitable institution is exempt from tort liability. Walsh and Southern Key's owner/president, David McCollister, decided that a new business structure involving a non-profit company would allow the homes to continue operating without the need for purchasing liability insurance.

In 2003, McCollister and Walsh oversaw the creation of AEO as a charitable entity to hold the nursing homes' licenses. Walsh, while still a part owner in Southern Key, became a director of AEO and ensured that its charter and by-laws declared it to be a non-profit corporation. But, although AEO became the licensee of the nursing homes, it did not acquire the nursing-home facilities. Instead, it rented the nursing-home properties from the Southern Key limited partnerships, which retained ownership of the homes. The rental fees paid by AEO to the partnerships were negotiated by Walsh on behalf of AEO and McCollister on behalf of Southern Key.

AEO also did not provide its own staff for much of the facilities' operations. Rather, it contracted with two companies, Healthcare Financial Advisors, LLC (HC Financial), and Healthcare Staffing Associates, Inc. (HC Staffing), to provide financial services and direct-care workers for a fee. HC Financial and HC Staffing had key personnel in common with or shared close connections to Southern Key and AEO. Doug Walsh of Southern Key and AEO

2


became an employee of HC Financial. Chris McMorris, a former employee of Southern Key, and Chad Blackwell, a CPA and former contractor with Southern Key, became part owners and operators of HC Financial and HC Staffing. According to McMorris, he continued to perform the same work for HC Financial that he had previously performed for Southern Key. He also testified in a deposition that HC Staffing was basically a "payroll company" that did not have responsibility for hiring or firing AEO's workers. All of the related companies shared the same address in Baton Rouge, Louisiana.

Between 2007 and 2009, plaintiffs Donna Watkins, Linda Thompson, and Ann Carnell sued AEO in Crittenden County for negligence and other causes of action related to AEO's Willowbend Nursing Home in Marion. AEO pled charitable immunity as a defense and sought summary judgment on the issue. In the appeals arising from those suits—*Carnell*, *Thompson*, and *Watkins*, *supra*—we held that genuine issues of material fact remained as to AEO's charitable status.

While the appeals in *Carnell*, *Thompson*, and *Watkins* were pending, the present lawsuit was underway in Lonoke County. Appellee Joe Ann Nicholson alleged that AEO committed negligence and violated Arkansas's Residents Rights law by failing to provide proper care to her mother, Mary Harrod, a resident at AEO's Spring Creek Living Center in Cabot. Nicholson claimed further that AEO, HC Financial, HC Staffing, and Spring Creek Limited Partnership (the owner of the nursing home) were engaged in a joint venture for profit and a civil conspiracy to use the doctrine of charitable immunity to avoid responsibility to Spring Creek's residents.

SLIP OPINION

AEO again responded with the defense of charitable immunity and filed a corresponding motion for summary judgment, relying on the same exhibits it filed in *Carnell*, *Thompson*, and *Watkins*. After our opinion in *Watkins* was handed down, AEO amended its summary-judgment motion to include what it characterizes as "substantially more evidence" of its status as a true charity. This evidence consisted primarily of historical data, analyzed by Doug Walsh, that purported to show the reasonableness of the rental rates paid by AEO to the limited partnerships; the reasonableness of AEO's contract payments to HC Financial and HC Staffing; and the modest profit margin enjoyed by the Spring Creek facility. Nicholson responded that AEO still was not entitled to charitable immunity as a matter of law and noted that, after AEO relinquished its nursing-home license in 2010, the subsequent licensee paid considerably less rent than AEO had been paying to the Spring Creek Limited Partnership.

Following a hearing, the Lonoke County Circuit Court denied AEO's motion for summary judgment. The court ruled that there were genuine issues of fact as to whether AEO was entitled to charitable immunity and whether AEO and the related companies were engaged in a joint venture or civil conspiracy. AEO filed this appeal.

On the matter of charitable immunity, we hold that the court ruled correctly. While the additional historical data submitted by AEO arguably made some inroads on the question of whether its expenses and profit margins were reasonable, much of the data is subject to challenge and interpretation, as Nicholson points out in her brief. More importantly, the proof and inferences that led to our rejection of AEO's quest for summary judgment in *Carnell*, *Thompson*, and *Watkins* are still present in this case, despite AEO's provision of



additional exhibits. Appellee Nicholson offered proof, as did the plaintiffs in the earlier cases, that the primary impetus for creating AEO was to enable the nursing homes to continue operating profitably without purchasing liability insurance; that AEO had a close relationship with HC Staffing, HC Financial, the limited partnerships, and Southern Key; that Walsh negotiated the lease payment on behalf of AEO; that the creation of AEO did not change the actual operation of the nursing homes; and that the money generated by AEO, whether labeled "profits" or "reasonable expenses," continued to flow in the same direction as it did when the nursing homes were for-profit enterprises. These matters are relevant to what we have termed the "pivotal issue" in the AEO cases:  whether the charitable-entity form has been abused. *Carnell*, 2012 Ark. App. 698, at 9, ___ S.W.3d at ___. As the proof now stands, that issue has not been resolved as a matter of law and remains for resolution by a fact-finder. *Id.*, ___ S.W.3d at ___.

AEO argues that our analysis should not encompass any considerations beyond the so-called "eight factors" that our courts use to determine whether an organization is entitled to charitable immunity: 1) whether the organization's charter limits it to a charitable or eleemosynary purpose; 2) whether the organization's charter contains a not-for-profit limitation; 3) whether the organization's goal is to break even; 4) whether the organization earned a profit; 5) whether any profit or surplus must be used for charitable or eleemosynary purposes; 6) whether the organization depends on contributions and donations for its existence; 7) whether the organization provides its services free of charge to those unable to pay; and 8) whether the directors and officers receive compensation. *Watkins*, 2012 Ark. App.

301, at 9, ___ S.W.3d at ___.[1] However, we are not limited to viewing only these factors. They are illustrative, not exhaustive. *Id.*, ___ S.W.3d at ___.

Accordingly, we affirm the circuit court's denial of summary judgment to AEO on the ground of charitable immunity.

AEO also argues that the court erred in denying its motion for summary judgment on Nicholson's claims of joint venture and civil conspiracy. We ordinarily will not reverse an order denying summary judgment. *Helena-W. Helena Sch. Dist. v. Monday*, 361 Ark. 82, 204 S.W.3d 514 (2005). However, we make an exception where, as here, the denial of summary judgment has the effect of making a possibly immune defendant go to trial. *Thompson*, 2012 Ark. App. 681, at 4, ___ S.W.3d at ___. In making this exception, we generally confine our ruling on appeal to whether the circuit court erred on the question of immunity. *Graham v. Cawthorn*, 2013 Ark. 160, at 1, n.1, ___ S.W.3d ___, ___. We may reach additional issues if they are closely related to immunity and "good sense and judicial economy" would warrant our deciding them. *See id.*, ___ S.W.3d at ___. But, in the present case, the court's rulings on joint enterprise and civil conspiracy are separate and distinct from the question of whether AEO is a genuinely charitable institution. We therefore do not reach AEO's argument on this aspect of the circuit court's order.

The remaining points on appeal are raised by Nicholson. She asks us to overrule the charitable immunity doctrine, which we held in *Watkins* that we lack the authority to do.

---

[1]We stated in *Watkins* that the third, fourth, and fifth factors were the "most relevant" for our purposes. *Watkins*, 2012 Ark. App. 301, at 10, __ S.W.3d at ___.

SLIP OPINION

2012 Ark. App. 301, at 8, ___ S.W.3d at ___. She also contends that the civil-enforcement provision of our Residents Rights law, Ark. Code Ann. § 20-10-1209 (Repl. 2005), has abrogated the charitable-immunity doctrine. As we stated in *Thompson*, *supra*, we need not decide that issue because AEO has not proved that it is entitled to charitable immunity as a matter of law. 2012 Ark. App. 681, at 5-6, ___ S.W.3d at ___.

Nicholson also argues that the circuit court should have ruled conclusively that AEO was *not* entitled to immunity. We cannot address that argument because Nicholson is seeking affirmative relief without having filed a cross-appeal. *See Hanshaw v. Blair*, 2011 Ark. App. 30.

Affirmed.

WALMSLEY and GLOVER, JJ., agree.

*Dover Dixon Horne, PLLC*, by: *Thomas S. Stone*, for appellant.

*David A. Couch, PLLC*, by: *David A. Couch*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee.

SLIP OPINION