Entergy also included a more extensive affidavit from attorney Tim Matthews, which, unlike the earlier affidavit, distinguished the attorney-led root-cause evaluation of the stator-lift accident from more "routine root-cause investigations ... done by facility personnel regarding relatively minor events." Mr. Matthews also averred that the post-accident root-cause evaluation was not done in the ordinary course of business because counsel, as opposed to other Entergy personnel, chose its "methodologies and investigative techniques." There is no indication that the circuit court reconsidered its discovery order, at Entergy's request or otherwise, in light of the new information in Mr. Matthews's second affidavit.
On appeal, Entergy first contends that the circuit court abused its discretion by relying only on lawyer's argument, rather than evidence, to order disclosure of the root-cause evaluations, which, according to Entergy, is not sufficient. Second, Entergy asserts that Francis had no procedural right to seek production of the root-cause evaluations because he was not a "discovering party" entitled to production. Entergy raises two additional subpoints within this argument, including that Bigge was not entitled to production of the reports *369 because Bigge failed to meet and confer with Entergy before filing its motion to compel, as required by Ark. R. Civ. P. 37(a)(2). Entergy further asserts that Francis and Bigge are not entitled, in any event, to production of the second root-cause evaluation because they failed to provide any notice prior to the hearing on February 28, 2017, that they would seek production of that document. Finally, Entergy contends that the circuit court abused its discretion because the root-cause evaluations are work product and Francis has not shown a substantial need that defeats the privilege.[3]
III. Standard of Review
A circuit court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed on appeal absent an abuse of discretion that is prejudicial to the appealing party. Gerber Prods. Co. v. CECO Concrete Constr. , 2017 Ark. App. 568, at 6, 533 S.W.3d 139, 143. To have abused that discretion, the circuit court must have not only made an error in its decision, but also must have acted improvidently, thoughtlessly, or without due consideration. Id. The abuse-of-discretion standard is also applied to a circuit court's ruling on a protective order. See id.
IV. Discussion
A. The Basis of the Circuit Court's Ruling
Mr. O'Keefe's deposition testimony is at the heart of this issue. During the hearing that was held on February 28, 2017, Francis's counsel read excerpts from the deposition to support his argument that the root-cause evaluations were created in the ordinary course of business, rather than in anticipation of litigation. Entergy now claims that the circuit court erred by allowing Francis to use the deposition in that manner because he did not make the showing required by Ark. R. Civ. P. 32(a)(3)(A)-(E) (2017). Entergy further argues that Francis did not introduce the deposition-or any other exhibit-into evidence; therefore, the circuit court erroneously relied solely on the arguments of counsel when it found that the work-product rule did not apply to the root-cause evaluations. We decline to consider this issue because Entergy failed to preserve it for appellate review.
This court will not consider arguments raised for the first time on appeal. See Parkerson v. Brown , 2013 Ark. App. 718, at 5, 430 S.W.3d 864, 870. Entergy did not argue below, as it does now, that Francis failed to comply with the requirements of Ark. R. Civ. P. 32, before using Mr. O'Keefe's deposition at the hearing or that only the statements of counsel supported the argument that the work-product rule did not apply to the root-cause evaluations. Accordingly, we must decline to consider these arguments because Entergy makes them for the first time on appeal.
B. Francis's and Bigge's Rights to Seek Production of the Reports
Entergy next argues that the circuit court's order should be reversed because Francis did not have standing to compel production of the root-cause evaluations. Specifically, Entergy contends that Francis did not separately propound interrogatories and requests for production to Entergy and was not a "discovering party" who had standing to file-or join-a motion to compel under *370 Ark. R. Civ. P. 37(a)(2). Entergy also challenges Bigge's right to compel production of the documents, alleging that Bigge failed to confer with Entergy, as also required by Rule 37(a)(2), before filing its motion to compel on December 18, 2014. Finally, Entergy asserts that the circuit court erred by ordering production of the second root-cause evaluation because Entergy did not have fair notice before the hearing that Francis and Bigge would seek its production.
Entergy's argument about Francis's right to seek production of the root-cause evaluations is well taken. Francis never served Entergy with interrogatories or requests for production formally seeking the root-cause evaluations, and in the absence of making his own requests for discovery from Entergy, he lacked standing to "join" Bigge's motion to compel. See Ark. R. Civ. P. 37(a)(2) (providing that only "the discovering party" may move for an order compelling discovery). Accordingly, we reverse the order of the circuit court to the extent that it orders Entergy to produce the root-cause evaluations to Francis.
Entergy is mistaken, however, that the circuit court's order to produce the documents to Bigge was an abuse of discretion because Bigge failed to confer with Entergy prior to filing its motion to compel. As an initial matter, the argument ignores that this is an appeal from the circuit court's order denying Entergy's motion for an order of protection pursuant to Ark. R. Civ. P. 26(c) (2017), which required Entergy, and not Bigge, to state that it "in good faith conferred or attempted to confer with other affected parties." Id. Additionally, the record demonstrates that Entergy waived the argument, which first appeared in its response to Bigge's motion to compel, because it later met with Bigge and other parties regarding the items requested in the interrogatories and requests for production and provided its supplemental responses to the discovery in October 2016.
Finally, we decline to reach the merits of Entergy's argument that it was denied fair notice that Francis and Bigge were going to request the second root-cause evaluation at the February 28, 2017, hearing. Quite simply, Entergy failed to preserve the argument for appellate review by raising it in the circuit court. See Parkerson , 2013 Ark. App. 718, at 5, 430 S.W.3d at 870. In any event, Entergy cannot credibly claim that it was unaware that the second root-cause evaluation was inextricably linked to the first, or that the second report, which was issued in December 2014, was outside the scope of the discovery that Bigge requested in "Interrogatory No. 21" or "Request for Production No. 9." Accordingly, we affirm.
C. The Work-Product Privilege
Entergy next contends that the circuit court abused its discretion by finding that the two root-cause evaluations did not qualify for the work-product privilege because they were created in the ordinary course of business. Specifically, Entergy asserts that, while its own policy required the root-cause evaluations, they had a far different character than those it performs in the ordinary course of business. Unlike more routine root-cause evaluations, those at issue here followed a severe accident that was certain to engender litigation; they were performed with the involvement of counsel; and they required a much more complex level of investigation. Entergy therefore contends that the two root-cause evaluations are "opinion work product" that warrant protection from disclosure even upon another party's showing of substantial need.
We hold that the circuit court did not abuse its discretion by finding that work-product protection did not apply to *371 the two root-cause evaluations. "The work product doctrine was designed to prevent 'unwarranted inquiries into the files and mental impressions of an attorney.' " Simon v. G.D. Searle & Co. , 816 F.2d 397, 400 (8th Cir. 1987) (quoting Hickman v. Taylor , 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ). Ordinary work product, including "raw data collected in the course of litigation and included in an attorney's file," Shook v. Love's Travel Stops & Country Stores, Inc. , 2017 Ark. App. 666, at 9, 536 S.W.3d 635, 640, is subject to qualified protection and is discoverable only upon "a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Ark. R. Civ. P. 26(b)(3). Opinion work product, consisting of "the mental impressions, conclusions, opinions, and or legal theories of an attorney or other representative of a party concerning the litigation," Ark. R. Civ. P. 26(b)(3), is subject to almost absolute protection. "Regardless of the type of work product at issue," however, "the threshold question governing application of the doctrine is whether the contested documents were prepared in anticipation of litigation." Shook , 2017 Ark. App. 666, at 9, 536 S.W.3d at 640.
"The mere possibility that litigation may result is not sufficient to trigger the protection of the work-product doctrine." Id. Rather, the test is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Id. at 10, 536 S.W.3d at 640. There is no work-product protection for documents prepared in the ordinary course of business. Id.
It is undisputed that Entergy would have performed the root-cause evaluations even in the absence of litigation, as required by its own policy and by the Nuclear Regulatory Commission. It argues, however, that the reports of those evaluations should nonetheless be protected as work product because the scale of the root-cause evaluations that followed the stator-lift accident were unlike those that are created in the ordinary course of business for more minor events. According to Entergy, the stator-lift root-cause evaluations were larger and more complex, were overseen by counsel, and were conducted when litigation was certain to occur. Entergy therefore argues that the circuit court abused its discretion by ordering it to produce the root-cause evaluations.[4]
We must reject this argument. The party asserting work-product privilege has the burden of proving its application, see Shook , 2017 Ark. App. 666, at 9, 536 S.W.3d at 640, and Entergy failed to timely offer the evidence that, in its view, establishes that the root-cause evaluations following the stator-drop incident were prepared outside the ordinary course of business. As an initial matter, there is no unredacted version of the first report in the record to allow the circuit court-or this court-to evaluate that claim, and there is no version of the second report-redacted or otherwise-in the record at all. Further, as indicated above, Entergy submitted two substantially different affidavits from Entergy's outside counsel, Timothy *372 Matthews. The first affidavit did little more than establish that counsel was involved in the first root-cause evaluation that was otherwise performed in the ordinary course of business. The second affidavit went to greater lengths to distinguish both root-cause evaluations from those that are more "routine," but it was not presented in a format that allowed the circuit court to consider it. Indeed, Entergy submitted the second affidavit in a reply to Francis's response to Entergy's motion for protective order only after the circuit court entered its order denying the motion. Entergy did not request reconsideration of the discovery order based on the new information in the second affidavit. Therefore, Entergy cannot use the second affidavit now to demonstrate that the circuit court acted "improvidently, thoughtlessly, or without due consideration," Gerber , 2017 Ark. App. 568, at 6, 533 S.W.3d at 139, when it ordered production of the root-cause evaluations. Because there was no abuse of discretion, we affirm the circuit court's order requiring production of the root-cause evaluations to Bigge.
V. Conclusion
Because we find that Entergy failed to meet its burden of proving that it created the root-cause evaluations in a form that was different from those it creates in the ordinary course of business, we hold that the circuit court did not abuse its discretion when it ordered Entergy to produce those documents to Bigge. The circuit court's order, therefore, is affirmed as it pertains to Entergy's production of the root-cause evaluations to Bigge. We further hold, however, that the circuit court abused its discretion when it ordered Entergy to produce the root-cause evaluations to Francis, who did not propound discovery seeking those documents. Accordingly, the circuit court's order is reversed to the extent that it orders Entergy to produce the root-cause evaluations to Francis.
Affirmed in part and reversed in part.
Whiteaker, J., agrees.
Hixson, J., concurs.

Entergy now appears to have abandoned its initial claim that the reports are also covered by the attorney-client privilege.

As indicated above, Bigge argued-and the circuit court ruled-that Entergy waived the work-product privilege for the first root-cause evaluation by disclosing its conclusions in its publication, The Navigator. We decline to reach the waiver issue, however, because we find that Entergy has failed to meet its burden of proving that the work-product privilege applies to the root-cause evaluations.